1   Kolin C. Tang (SBN 279834)
    Shepherd, Finkelman, Miller & Shah, LLP
2   11755 Wilshire Boulevard, 15th Floor
    Los Angeles, CA 90025
3   Telephone: (323) 510-4060
    Facsimile:  (866) 300-7367
4   Email: ktang@sfmslaw.com

5   Attorneys for Plaintiffs-Relators

6   [Additional Counsel Listed On Signature Page]

7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORINA, *ex rel* BOBBETTE A. SMITH and SUSAN C. ROGERS, | CIVIL ACTION NO.: 2:13-cv-3772-DMG (MRWx) |
| | (Assigned to the Honorable Dolly M. Gee) |
| Plaintiffs-Relators, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** |
| vs. | |
| TOM S. CHANG, M.D., TOM S. CHANG, M.D., INC., MICHAEL A. SAMUEL, M.D., MICHAEL J. DAVIS, M.D., RETINA INSTITUTE OF CALIFORNIA MEDICAL GROUP, CALIFORNIA EYE AND EAR SPECIALISTS a/k/a OCULAR INSTITUTE OF CALIFORNIA and n/k/a ACUITY EYE SPECIALISTS, BRETT BRAUN and SAN GABRIEL AMBULATORY SURGERY CENTER LP, | DATE: October 20, 2017 TIME: 9:30 A.M. PLACE: Courtroom 8c, 8th Floor |
| Defendants. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.   The Claims At Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.   The Federal FCA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.   The CA-FCA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.   The CA-IFPA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.   The Court Should Deny Defendants' Motion Because the TAC
           Adequately Alleges that Defendants Violated the FCA . . . . . . . . . . . 6

           1.   Plaintiffs Have Sufficiently Alleged that Defendants Violated
                the AKS by Giving Remuneration to Referring Practitioners . 6

           2.   The TAC Sufficiently Alleges Facts that RIC Defendants
                Offered RIC and CES Physicians Something of Value in
                Exchange
                for Referrals to SG-ASC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           3.   The TAC Sufficiently Alleges Why ICG Tests That Defendants
                Selected For Their Government Healthcare Programs' Patients
                Were Medically Unnecessary and Worthless . . . . . . . . . . . . . 13

           4.   Plaintiffs Have Sufficiently Alleged Defendants' Fraudulent
                Submission of PQRS Data in the TAC . . . . . . . . . . . . . . . . . . 17

      B.   The Court Should Deny Defendants' Motion Because The TAC
           Sufficiently Alleges that Defendants Violated Both the CA-FCA
           and the CA-IFPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

           1.   Defendants Violated California's Discriminatory Billing Rule
                by Charging Medi-Cal Patients More Than Non-Medi-Cal
                Patients for the Same Services . . . . . . . . . . . . . . . . . . . . . . . . 20

           2.   The TAC Sufficiently Alleges a Valid CA-IFPA Claim Based
                on Waivers of Commercial Plan Co-Payments
                and Deductibles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

-i-

# TABLE OF AUTHORITIES

*Advanced Rehab., LLC v. UnitedHealthgroup, Inc.*,
  498 F. App'x 173 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Frazier ex rel. U.S. v. Iasis Healthcare Corp.*,
  392 F. App'x 535 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanlester Network v. Shalala*,
  51 F.3d 1390 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*,
  2014 WL 4104789, at *1 (D. Minn. Aug. 19, 2014) . . . . . . . . . . . . . . . . 15

*KGV Easy Learning Corp. v. Sebelius*,
  2011 WL 490990, at *1 (9th Cir. Feb. 14, 2011) . . . . . . . . . . . . . . . . . . . 13

*Klaczak v. Consol. Med. Transp.*,
  458 F. Supp. 2d 622 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Maa v. Ostroff*,
  2013 WL 1703377, at *20 (N.D. Cal. Apr. 19, 2013) . . . . . . . . . . . . . . . . 13

*Mikes v. Straus*,
  274 F.3d 687 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Physicians & Surgeons Laboratories, Inc. v. Department of Health Services*,
  8 Cal. Rptr. 2d 565 (Ct. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*State of N.Y. ex rel. Bodnar v. Sec'y of Health & Human Servs.*,
  903 F.2d 122 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*,
  50 F. Supp. 3d 497 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. ex rel. Frazier v. IASIS Healthcare Corp.*,
  554 F. Supp. 2d 966 (D. Ariz. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. ex rel. Hendow v. Univ. of Phx.*,
  461 F.3d 1166, 1171 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*,
   41 F. Supp. 3d 323 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*U.S. ex rel. McDonough v. Symphony Diagnostic Servs. Inc.*,
   36 F. Supp. 3d 773 (S.D. Ohio 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. ex rel. Modglin v. DJO Glob. Inc.*,
   48 F. Supp. 3d 1362 (C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. ex rel. Parikh v. Citizens Med. Ctr.*,
   977 F. Supp. 2d 654 (S.D. Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. ex rel. Pogue v. American Healthcorp, Inc.*,
   977 F. Supp. 1329 (M.D. Tenn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*,
   565 F. Supp. 2d 153 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. ex rel. Ryan v. Lederman*,
   2014 WL 1910096, at *3 (E.D.N.Y. May 13, 2014) . . . . . . . . . . . . . . . . . . . 16

*U.S. ex rel. Solis v. Millennium Pharm., Inc.*,
   2015 WL 1469166, at *6 (E.D. Cal. Mar. 30, 2015) . . . . . . . . . . . . . . . . . . . 9

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
   125 F.3d 899 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Space Coast Med. Assocs., L.L.P.*,
   94 F. Supp. 3d 1250 (M.D. Fla. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Universal Health Services v. U.S. ex rel. Escobar*,
   136 S. Ct. 1989 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **Statutes and Rules**

*22 Cal. Code Regs.*,
   §§ 51480(a), 51501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Anti-Kickback Statute*,
   42 U.S.C. § 1320a-7b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Cal. Bus. & Prof. Code*,
   § 657(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

-iii-

*Cal. Penal Code,*
§ 550(a)(1), (6), (9), (b)(1)-(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*California False Claims Act,*
Cal. Gov. Code §§12650, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*California Insurance Frauds Prevention Act,*
Cal. Insurance Code §1871.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Federal Medicaid Program,*
42 U.S.C. §§ 1396, *et seq.* ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Title XVIII of the Social Security Act,*
42 U.S.C. §§ 1395, *et seq.*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States False Claims Act,*
31 U.S.C. §§ 3729, *et seq.*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **Other Authorities**

*AAPC Coder,*
https://coder.aapc.com/cpt-codes/67028 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Black's Law Dictionary,*
697 (6th ed. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I. __INTRODUCTION__

On behalf of the United States of America ("United States") and the State of California ("California"), Plaintiffs-Relators, Bobbette A. Smith and Susan C. Rogers (collectively, "Plaintiffs-Relators" or "Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in Opposition ("MPA") to the Motion to Dismiss ("Motion") Relators' Third Amended Complaint ("Complaint" or "TAC") of Defendants, Tom S. Chang, M.D., Tom S. Chang, M.D., Inc., Michael A. Samuel, M.D., Michael J. Davis, M.D. (collectively "RIC Partners"); Brett Braun ("Braun"), Retina Institute of California Medical Group, ("RIC," and with RIC Partners, the "RIC Defendants"), California Eye and Ear Specialists n/k/a Acuity Eye Specialists ("CEES" or "California Eye and Ear"), and San Gabriel Ambulatory Surgery Center LP ("SG-ASC" or "San Gabriel Surgery Center") (collectively "Defendants").

The Plaintiffs-Relators filed their TAC in response to the Honorable Dolly M. Gee's July 25, 2017 Order (the "Order"), granting in part and denying in part Defendants' Motion to Dismiss Plaintiffs-Relators' Second Amended Complaint ("SAC"). In response to the TAC, Defendants filed an additional Motion to Dismiss, claiming that six (6) of the bases upon which claims are asserted under the United States False Claims Act ("FCA" or "Federal FCA"), 31 U.S.C. §§ 3729, *et seq.*, California False Claims Act ("CA-FCA" or "State FCA"), Cal. Gov. Code §§12650, *et seq.*, and California Insurance Frauds Prevention Act, Cal. Insurance Code §1871.7 ("CA-IFPA"), in the TAC are still, somehow, insufficient–even though Plaintiffs' amendments specifically addressed the deficiencies identified by the Court with respect to each such claim. Defendants' insistence that, even after

CIVIL ACTION NO.:                      PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                 TO MOTION TO DISMISS

-1-

amendment pursuant to the Order, these theories of liability ought to be dismissed is nothing more than a desperate attempt to avoid scrutiny of their fraudulent and actionable conduct by a trier of fact.  That effort should not be permitted to stand. Plaintiffs' theories have all been sufficiently pled and all should withstand Defendants' latest Motion.

## II.  STATEMENT OF FACTS

### A.  The Claims At Issue

On July 25, 2017, the Court issued an Order addressing Defendants' Motion to Dismiss Plaintiffs' SAC.  In that Order, the Court denied Defendants' motion on nine separate grounds, and, in so doing, found that six of Plaintiffs' theories of liability were sufficiently pled.  The Order also granted the Motion in part, finding that six of Plaintiffs' theories of liability were insufficiently pled.  The Court granted Plaintiffs leave to amend those six theories that were insufficiently pled. In response, Plaintiffs amended the SAC and filed the detailed TAC on behalf of the United States and the State of California on August 15, 2017, which addressed each and every one of the pleading deficiencies identified by the Court.  In the TAC, Plaintiffs alleged that Defendants violated the FCA; the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b; the CA-FCA; and the CA-IFPA, based on schemes to defraud the United States and California in connection with Government Healthcare Programs, namely the federal Medicare Program, Title XVIII of the Social Security Act ("Medicare"), 42 U.S.C. §§ 1395, *et seq.*, and the federal Medicaid Program ("Medicaid"), 42 U.S.C. §§ 1396, *et seq.*, and California's corresponding Medicaid Program ("Medi-Cal").  Plaintiffs-Relators specifically allege that Defendants engaged in multiple fraudulent schemes, each

CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)         TO MOTION TO DISMISS

-2-

resulting in the submission of false and fraudulent claims for reimbursements from Medicaid, Medicare, and/or Medi-Cal.

## B. The Federal FCA Claims

First, as alleged in detail, the RIC Defendants violated the FCA by paying kickbacks to physicians in exchange for patient referrals to RIC, in violation of the AKS. The AKS forbids "any person or entity from knowingly and willfully offering, paying, soliciting, or receiving any remuneration to influence either the referral or the arrangement of services reimbursable by a federal healthcare program." Order at 10; *see* 42 U.S.C. § 1320a-7b(b). The RIC Defendants induced referring optometrists, physicians, and other providers (the "Referring Practitioners") to refer their patients to RIC by routinely providing remuneration to the Referring Practitioners. The RIC Defendants provided remuneration to Referring Practitioners in the form of expensive dinners, drinks, event tickets, gifts, and free training, all of which were given with the purpose of soliciting patient referrals and in return for patient referrals. The exchange of remuneration for patient referrals violates the AKS, which, in turn, violates the FCA.

Second, the RIC Partners, RIC Physicians, and CEES physicians violated the FCA by making improper referrals to SG-ASC. RIC and CEES physicians were required to refer their patients to SG-ASC as a condition of their continued employment. Referrals for medical services to an entity in which the referring physician has a financial interest violates the AKS. Further, Plaintiffs provided a list of patients who were referred to SG-ASC, and a number of claims for services provided at SG-ASC were submitted for reimbursement to Medicare, Medicaid, and other Government Healthcare Programs, resulting in FCA violations.

CIVIL ACTION NO.:                      PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                TO MOTION TO DISMISS

-3-

1    Third, the RIC Defendants violated the FCA by selecting the medically

2  unnecessary and worthless indocyanine green angiography ("ICG") procedure for

3  their Government Healthcare Programs' patients with age-related macular

4  degeneration ("AMD").  The TAC clearly alleges that the RIC Defendants' and

5  Physicians' selection and use of ICG as a diagnostic tool is medically unnecessary

6  because the ICG testing results data are not used by the RIC Defendants for

7  diagnosis, evaluation, or treatment of their AMD patients, thus confirming that,

8  except in rare cases, the Defendants' use of ICG is worthless on its face.  Such

9  conduct is clearly fraudulent under the FCA.

10    Fourth, Defendants falsely certified Physician Quality Reporting System

11  ("PQRS") data in exchange for incentive payments.  Defendants represented to the

12  Centers for Medicare and Medicaid Services ("CMS") that they were submitting

13  data for a twelve-month period, as required in order to receive the payments.

14  However, despite this representation, Defendants only submitted four months'

15  worth of data.  This false certification is actionable under the FCA.

16    **C.    The CA-FCA Claims**

17    Fifth, RIC and the RIC Partners violated the CA-FCA by charging Medi-Cal

18  patients more per service than non-Medi-Cal patients, manipulating their "usual

19  fee" in order to maximize the reimbursement amount that they could receive from

20  the Medi-Cal program.  As such, the RIC Defendants violated Medi-Cal's

21  discriminatory billing rule.

26  CIVIL ACTION NO.:              PLAINTIFFS' MPA IN OPP.
27  2:13-cv-3772-DMG (MRWx)        TO MOTION TO DISMISS

28                          -4-

### D. **The CA-IFPA Claims**

Sixth and finally, RIC, the RIC Partners, CEES, and SG-ASC violated the CA-IFPA by routinely waiving co-payment and deductible amounts that they were required to charge patients who were covered under commercial health insurance plans.

## III. **STANDARD OF REVIEW**

A complaint meets the requirements of Rule 12(b)(6) if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011). In addition, because the FCA is an anti-fraud statute, Rule 9(b) applies, which a complaint satisfies when the circumstances constituting fraud, *i.e.*, the "who, what, when, where, and how of the misconduct charged," are alleged with particularity, but conditions of a person's mind may be alleged generally. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). As set forth below, the TAC thoroughly meets these standards for each of the six arguments challenged, and dismissal, therefore, is unwarranted.

CIVIL ACTION NO.:                              PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                  TO MOTION TO DISMISS

-5-

## IV.   ARGUMENT

### A.   The Court Should Deny Defendants' Motion Because The TAC Adequately Alleges that Defendants Violated The FCA

1.   Plaintiffs Have Sufficiently Alleged That Defendants Violated the AKS by Giving Remuneration to Referring Practitioners

Plaintiffs explain in the TAC, and the Court acknowledged in its Order, that a violation of the AKS is a violation of the federal FCA.  TAC ¶ 51; Order at 10. As Defendants explain in their Motion, the Court ruled in its Order that Plaintiffs sufficiently and properly alleged all but one of their arguments supporting their claim that Defendants violated the AKS.  The Court found that Plaintiffs had "not sufficiently alleged the referring physicians' receipt of payment or other remuneration in exchange for referrals," and consequently "failed to state a claim under the AKS and the FCA."  Order at 12.  The Court explained that the allegations regarding regular meals and a continuing education program were insufficient because "there [were] no allegations as to who paid for those meals or whether the education program was free for all attendees."  *Id.*  The Court also found that "to state a claim under [the AKS], Relators must allege that the RIC Defendants offered or paid remuneration to outside physicians to induce those physicians to refer their patients to RIC."  *Id.*  (citing *Hanlester Network v. Shalala*, 51 F.3d 1390, 1397 (9th Cir. 1995)).  As detailed below, the TAC includes specific and detailed averments addressing each of these items.

In their Motion, Defendants state that the TAC "contains no new allegations explaining how such waivers constituted remuneration to the physicians" and that the specific remuneration allegations that Plaintiffs do make in the TAC still "fall far short of meeting the . . . requirements of Rule 9(b) with respect to an alleged

CIVIL ACTION NO.:                          PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

scheme to illegally pay or reward physicians for patient referrals." Mot. at 9. Defendants apparently did not read the TAC, which contains all of these allegations and does so with more than sufficient particularity to satisfy the "who, what, when, and how" requirements of Rule 9(b).

The Court in its Order, and Defendants in their Motion, acknowledge that remuneration does not necessarily have to involve a cash payment akin to a bribe. Order at 10; Mot. at 8.  "Remuneration" includes "anything of value."  *United States ex rel. McDonough v. Symphony Diagnostic Servs. Inc.*, 36 F. Supp. 3d 773, 777 (S.D. Ohio 2014) (quoting *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622 (N.D. Ill. 2006)); *see* Order at 10; Mot. at 8.  The TAC includes an extensive chart, detailing a sample of the gifts, meals, and workshops RIC provided to Referring Practitioners.  TAC ¶¶ 77-80.  This chart provides the date, amount, and description of each gift or event, and the identity of the Referring Practitioner who received the gift(s), if known.  It also alleges that this sample list includes gifts that RIC gave to physicians, both with the purpose of inducing and in return for receiving patient referrals.  *Id.* ¶ 77.  As such, these gifts, combined with the promise of the co-payment waivers, induced physicians to refer their patients to RIC.

By waiving co-payments for Medicare patients, RIC also persuaded the Referring Practitioners to refer their patients to RIC; in exchange for the referral, contingent upon the waiver, the Referring Practitioners received expensive dinners, event sponsorships, and "free" training.  RIC and the RIC Defendants, including Braun, purchased meals and gifts for the Referring Practitioners, and RIC was responsible for arranging valuable sponsorships to sponsor RIC "events" to induce

CIVIL ACTION NO.:                                  PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                  TO MOTION TO DISMISS

-7-

referrals.  Further, the TAC alleges that, because remuneration need not be purely monetary, the RICX training programs constituted remuneration inducing patient referrals, as well.  Training on RICX's mobile Optical Coherence Tomography ("OCT") device and free attendance at Okularfest, RIC's continuing medical education program, both certainly provide something "of value," classifying them as remuneration for purposes of the AKS.  The TAC alleges that the Referring Practitioners were taken out for dinner and given gifts and training, both as preliminary inducements to refer patients to RIC, and in return for patient referrals. Contrary to Defendants' flimsy argument that these allegations "did not constitute remuneration to the referring physicians" (Mot. at 9), they fully satisfy the Court's requirement that the TAC allege "physicians' receipt of payment or other remuneration in exchange for referrals."  Order at 12; *see* TAC ¶¶ 77, 82.      The Defendants then laughably attempt to distinguish RIC's behavior as "mere encouragement" and attempt to belittle RIC's strong inducement efforts by classifying them as "non-monetary"– a descriptor that is irrelevant to the definition of remuneration in the AKS.[1]  Mot. at 10.  The TAC is clear that the dinners, gifts,

_____

[1]Defendants cite *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995), for the proposition that "inducement" and "encouragement" are not synonymous and that the TAC does not sufficiently allege that the remuneration in the instant case was "intended to 'induce' physicians or others to refer their patients to RIC."  Mot. at 10.  Defendants' argument fails both factually and legally.  Factually, the TAC does allege that the remuneration constituted inducement, stating that the "RIC Defendants induced referrals from the Referring Practitioners by providing remuneration in the form of free meals, drinks, tickets to events and other gifts" and that free training through the RICX program "was designed to and did, in fact, induce referrals."  TAC ¶¶ 74, 78.  The TAC alleges inducement, not mere encouragement.  Also, as a matter of law, the conduct of the

CIVIL ACTION NO.:                                    PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                    TO MOTION TO DISMISS

-8-

1    event tickets, and free training to Referring Practitioners were given both in an

2    effort to induce referrals and as a reward for referrals.[2]  Defendants also state that

3    "Defendants' payment for a single dinner and drinks with a potential referral

4    source" is insufficient to constitute inducement, but Plaintiffs do not allege that

5    each Referring Practitioner only received "a single dinner and drinks" in exchange

6

7    _____

8    RIC Defendants constitutes inducement, not merely encouragement.  *Hanlester

     Network* defined inducement as "to bring on or about, to affect, to cause, to

9    influence to [sic] an act or course of conduct" and, specifically in the AKS context,

     inducement is "an intent to exercise influence over the reason or judgment of

10   another in an effort to cause the referral of program-related business." *Hanlester

11   Network*, 51 F.3d at 1398 (citing *Black's Law Dictionary*, 697 (6th ed. 1990)).  The

     RIC Defendants "inten[ded] to exercise influence over the [] judgment of [the

12   Referring Practitioners] in an effort to cause the referral of program-related

13   business," which places the RIC Defendants squarely within the AKS meaning of

14   "inducement."

15       [2]*See United Sates ex rel. Solis v. Millennium Pharm., Inc.*, No. 2:09-cv-

16   0310-MCE-EFB, 2015 WL 1469166, at *6 (E.D. Cal. Mar. 30, 2015) (finding that

     allegations of remuneration in the form of "grants, honoraria, and meals" used to

17   induce physicians in violation of the AKS were sufficient to withstand a motion to

18   dismiss); *United States ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d

     497, 520 (S.D.N.Y. 2014) (classifying as "illegal remuneration . . . speaker

19   programs, advisory boards, and gifts (including entertainment, travel and meals)").

20   Further, Defendants' reliance on *United States ex rel. Parikh v. Citizens Med. Ctr.*,

     977 F. Supp. 2d 654 (S.D. Tex. 2013) is misplaced.  In *Parikh*, the court did not

21   find that the trips, discounts, free medical care, and other gifts were insufficient to

22   qualify as remuneration; the court, instead, found that the allegations did not "fully

23   explain how the alleged scheme . . . [was] supposed to work."  *Id.* at 674-75.  This

     case is inapposite because the TAC specifically explains how RIC's gifts induced

24   the Referring Practitioners and how RIC benefitted from the referrals.  TAC ¶¶ 70-

25   84.

26   CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.

27   2:13-cv-3772-DMG (MRWx)               TO MOTION TO DISMISS

28                                    -9-

1  for patient referrals.  Mot. at 10.  The TAC alleges that the "above remuneration

2  was not isolated in nature but, rather, these examples are provided to illustrate the

3  RIC Defendants' consistent pattern and practice" of inducing Referring

4  Practitioners to refer patients to RIC.  TAC ¶ 79.  What Defendants dismiss as a

5  "marketing plan" was a coordinated effort to induce referrals through

6  remuneration, in violation of the AKS.  The Order requires Plaintiffs to

7  "sufficiently allege[] the referring physicians' receipt of payment or other

8  remuneration in exchange for referrals."  Order at 12.  Plaintiffs have met and, in

9  fact, have surpassed that requirement.

10                     2.     The TAC Sufficiently Alleges Facts that RIC Defendants
                            Offered RIC and CEES Physicians Something of Value in

11                             Exchange for Referrals to SG-ASC

12       In its Order, the Court granted Defendants' Motion in part because "[t]he

13 SAC [did] not contain any allegations that the RIC Defendants offered or paid RIC

14 or CEES referring physicians anything of value in exchange for referrals to SG-

15 ASC, or as a condition of their continued employment."  Order at 15.  Further, the

16 Court found that Plaintiffs "[had] not sufficiently identified the patients referred to

17 SG-ASC and the resulting Medicare claims falsely submitted to state a claim under

18 Rule 9(b)" and that "the SAC fail[ed] to allege that claims were actually submitted

19 to Medicare for services provided at SG-ASC."  *Id.*  In the TAC, Plaintiffs

20 included allegations regarding this claim to sufficiently satisfy Rule 9(b):

21         As a result of the patients referred to SG-ASC by the RIC Defendants,

22         RIC itself, and CEES, a number of claims were submitted for

23         reimbursement to Medicare, Medicaid and other Government

24         Healthcare Programs for services provided at SG-ASC. . . .  As a result

25

26 CIVIL ACTION NO.:              PLAINTIFFS' MPA IN OPP.

27 2:13-cv-3772-DMG (MRWx)       TO MOTION TO DISMISS

28                             -10-

1  of the referrals to SG-ASC and the services then provided by SG-ASC,

2  claims were submitted for reimbursement to Medicare and other

3  Government Healthcare Programs with respect to the Medicare

4  patients referred to SG-ASC by RIC and CEES.

5  TAC ¶ 107.

6  These allegations constitute "reliable indicia that lead to a strong inference that

7  claims were actually submitted," as required by the Order.  *United States v. United*

8  *Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  Further, the TAC

9  alleges that "[p]hysicians employed by RIC and CEES were also required to refer

10  patients to SG-ASC <u>as a condition of their continuing employment</u>."[3]  TAC ¶ 102.

11  The TAC alleges, with as much certainty as it can given the information in its

12  possession, the number and identities of the patients referred.  Combined, these

13  allegations include each of the missing components that the Court identified in its

14  Order: that patients were referred to SG-ASC by the RIC Defendants, by RIC, and

15

16

17  _____

18  [3]See *United States ex rel. Pogue v. American Healthcorp, Inc.*, 977 F. Supp.
19  1329, 1332-33 (M.D. Tenn. 1997), where plaintiff alleged FCA claims based, in
20  part, on defendant's practice of hiring physicians whose "continued employment
   was based on the number of referrals made." The court found that these allegations
21  were sufficient and denied defendant's motion to dismiss on this ground. *See also*
22  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 565 F. Supp. 2d
   153, 165-66 (D.D.C. 2008) (denying summary judgment because "relator []
23  produced a wealth of evidence supporting his claim that defendant compensated
24  physicians for their referrals," and "defendant made clear to its medical directors
   that their compensation and continuing employment was inextricably linked to the
25  number of patients they provided to the centers").

26  CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
27  2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

28                              -11-

by CEES; that the claims were actually submitted for reimbursement to Medicare;[4] and that referring patients to SG-ASC was a condition of continued employment for RIC and CEES physicians.

Defendants make an unwarranted assertion, in a manner which they repeat throughout their Motion, that Plaintiffs' claims must fail because they do not allege that the <u>only</u> patients treated by SG-ASC are those patients that were referred by RIC or CEES. There is no factual, legal, or procedural requirement that <u>all</u> patients treated at SG-ASC be referred by RIC or CEES in order to substantiate the allegation that RIC and CEES physicians were induced to refer their patients to SG-ASC. The FCA simply requires that RIC and CEES physicians be given something of value for their referrals to SG-ASC, which the TAC clearly pleads: their continued employment depended upon it. TAC ¶ 102.

As to the identities of the patients referred to SG-ASC, the TAC continues to allege that Plaintiffs possess a list of patients referred during a specific time period, an allegation which the Court deemed "sufficient to survive the MTD," so long as Plaintiffs have also alleged that "the claims were actually submitted to Medicare for services provided at SG-ASC." Order at 15. As noted above, the TAC

---

[4] *See Bilotta*, 50 F. Supp. 3d at 523. The court found that it was not necessary at the pleadings stage for the government to allege every kickback "with precision." *Id.* Plaintiffs have alleged sufficient allegations, similar to those in *Bilotta*, namely, that the claims were submitted by the RIC Defendants while the RIC Defendants were requiring these referrals. *Id.* (deeming claims sufficiently pled in part because "they were submitted by doctors at a time when the doctors were writing prescriptions for Novartis cardiovascular division drugs in exchange for kickbacks").

CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

-12-

includes this specific averment.  The TAC allegations on this claim are, therefore, sufficient to survive Defendants' Motion.

3.   The TAC Sufficiently Alleges Why ICG Tests That Defendants Selected For Their Government Healthcare Programs' Patients Were Medically Unnecessary and <u>Worthless</u>

In its Order, the Court agreed with Plaintiffs that "Medicare claims for medically unnecessary services may be actionable under the FCA."  Order at 17. *See Frazier ex rel. United States v. Iasis Healthcare Corp.*, 392 F. App'x 535, 537 (9th Cir. 2010).  The Court nevertheless found that the SAC failed to explain why the ICG tests are medically unnecessary and, as such, "fail[ed] to allege a critical component of this type of FCA claim."  Order at 17-18.  The TAC rectified this deficiency by detailing the "why" required to satisfy a Rule 9(b) claim.  For example, Plaintiffs allege in the TAC that "the RIC Defendants' and Physicians' <u>selection</u> of ICG as a <u>diagnostic tool</u> is medically unnecessary because the treatment approach used by RIC Defendants and Physicians does not use the ICG testing results data."  TAC  ¶ 135 (emphases added); *see KGV Easy Learning Corp. v. Sebelius*, No. 09-56393, 2011 WL 490990, at *1 (9th Cir. Feb. 14, 2011) (finding medical tests not reasonable or necessary in part because the laboratory "provided no evidence . . . the test results were later used to help manage the patient's medical conditions"); *see also* Order at 17 (citing *Maa v. Ostroff*, No. 12-cv-00200-JCS, 2013 WL 1703377, at *20 (N.D. Cal. Apr. 19, 2013) ("[T]he requirement that a service be reasonable and necessary generally pertains to the *selection* of the particular procedure and *not to its performance . . . .*")).

In addition, the TAC cites to an independent DOJ evaluation of the RIC Defendants' selection of the ICG test on Medicare patients that found over 90% of

CIVIL ACTION NO.:                           PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

-13-

the ICG charges were medically unnecessary because the RIC Defendants, "did not use ICG images to make their diagnoses, thereby confirming the worthless nature of the ICG tests administered in the vast majority of circumstances." TAC ¶ 136. Additionally, "the RIC Defendants bring their patients back at very short intervals for return visits, regardless of what the ICG images show, and do not use the ICG images to make patient treatment decisions. Therefore, based upon the manner in which the RIC Defendants conduct their practice, the selection and use of the ICG was medically unnecessary on its face." *Id.* Plaintiffs further allege why the RIC Defendants' selection of the ICG tests was medically unnecessary by citing to an expert review of 1397 angiograms performed by the RIC Defendants that found that the RIC Defendants relied on OCT findings and not the ICG data to treat their patients and that the ICG data had no influence on the RIC Defendants' treatment management. *Id.* ¶ 139. Moreover, the TAC provides a chart of the findings of this expert review that contains data for Defendants' Medicare patients and the amount of the RIC Defendants' charges deemed to be medically unnecessary. TAC ¶¶ 139-41. These allegations sufficiently allege that the selection and use of the ICG tests was medically unnecessary, and that the submission of claims for the unnecessary ICG testing violated the FCA, satisfying Rule 9(b).[5]

---

[5]Defendants cite *Frazier*, 392 F. App'x at 535 and *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997), for the proposition that Relators' allegations regarding the ICG tests are inadequate. Mot. at 17. Those cases are easily distinguishable. The court in *Frazier* found that the relator's allegations did not did meet Rule 9(b) because he did not explain "why the procedures were medically unnecessary," unlike Plaintiffs here. *United States ex rel. Frazier v. IASIS Healthcare Corp.*, 554 F. Supp. 2d

CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

-14-

While Defendants go to great lengths in their Motion to recast Plaintiffs' argument as a challenge to ICG testing generally (*see* Mot. at 14-17),[6] Plaintiffs do

966, 972 (D. Ariz. 2008), *rev'd in part on other grounds*, *Frazier ex rel. United States*, 392 F. App'x 535. In *Thompson*, the court affirmed that the relator failed to meet Rule 9(b) in part because he "did not identify any specific physicians who referred patients for medically unnecessary services." Here, of course, Plaintiffs do identify the specific physicians. Defendants cite two other cases in a footnote, dismissing allegations that the implemented treatment was medically unnecessary. Mot. at 17 n.12. *Advanced Rehab., LLC v. UnitedHealthgroup, Inc.*, 498 F. App'x 173, 176 (3d Cir. 2012) is inapposite because there were no FCA claims, and plaintiffs made only a "naked assertion" that they were entitled to reimbursement from a private insurer after the insurer deemed the treatments not "medically necessary." *Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-CV-2820 PJS/TNL, 2014 WL 4104789, at *1 (D. Minn. Aug. 19, 2014), was also not an FCA case, and the insurers in that case never explained why the MRI scans involved were medically unnecessary. *Id.* at *12. These facts are unlike the instant case, where Plaintiffs allege in detail why the ICG tests were medically unnecessary.

[6]Defendants cite authority to support their assertion that all the ICG tests performed were medically necessary because such tests are approved by the LCDs. Mot. at 15. But those cases only establish that LCDs govern, and treatment performed in compliance with the LCDs are medically necessary, which Plaintiffs do not dispute. *See United States v. Space Coast Med. Assocs., L.L.P.*, 94 F. Supp. 3d 1250, 1260 (M.D. Fla. 2015) (LCD did not require documentation prior to treatment, so documentation prior to billing does not result in false claim); *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1394 (C.D. Cal. 2014) (reimbursement permissible for FDA-approved devices where LCD permits off-label use); *United States ex rel. Ryan v. Lederman*, No. 04-CV-2483, 2014 WL 1910096, at *3 (E.D.N.Y. May 13, 2014) (treatment not in strict compliance with LCDs not reimbursable). And, Plaintiffs do not dispute that the Secretary of Health

CIVIL ACTION NO.:                        PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                   TO MOTION TO DISMISS

-15-

not deny the legitimacy of Local Coverage Determinations ("LCDs") or, for that matter, the applicability of LCDs to ICG testing itself. Plaintiffs do not allege that ICG tests are always "medically unnecessary" or have no medical value. *See* Mot. at 14. Rather, the TAC alleges that ICG testing may, in some limited circumstances, be medically necessary and, for those circumstances, be covered by Medicare. TAC ¶¶ 135-36, 138-41. But, while ICG tests in principle may be considered "medically necessary," according to the RIC Defendants' clinical records, as alleged in the TAC, the RIC Defendants were not following the LCDs; instead, they were selecting ICG tests for their patients in circumstances other than those for which the LCDs consider ICG tests "medically necessary." *Id.* ¶ 141. The TAC alleges that the RIC Defendants do not use the ICG testing data results to evaluate or treat their AMD patients, except in rare circumstances. *Id.* ¶ 135-36, 138-41. In other words, the Defendants used ICG testing beyond the scope of medical necessity as outlined in the LCDs, rendering the ICG tests as applied to Defendants' patients medically unnecessary.

Even Defendants note in their Motion that "FCA liability may arise if a Medicare provider submits claims for 'medically worthless tests.'" Mot. at 13 (citing *United States ex rel. Lee v. SmithKline Beecham, Inc*., 245 F.3d 1048, 1053 (9th Cir. 2001)). The standard for "medically worthless" is that "the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all." *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)

---

and Human Services has the final authority to determine whether a treatment is reasonable and necessary. *See State of N.Y. ex rel. Bodnar v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 125 (2d Cir. 1990).

CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

-16-

*abrogated on other grounds*, *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)).  The allegations in the TAC meet this standard because the RIC Defendants submitted claims to Medicare for ICG tests that, in their patients' circumstances, were medically worthless–that is because, as alleged in the TAC, Defendants did not even use the ICG test results to treat, diagnose, or evaluate their patients.

4.   Plaintiffs Have Sufficiently Alleged Defendants' Fraudulent Submission of PQRS Data in the TAC

In its Order, the Court concluded that "the SAC [did] not establish that RIC Defendants submitted partial data but certified that such data reflected the 12-month period."  Order at 19-20.  The TAC alleges this fact, claiming that "RIC falsified the data submitted to CMS and <u>represented that it was for a full year (even though it was not)</u>."  TAC ¶ 164.  As such, Defendants represented that the data was for the entire twelve-month period, not just the four months that the data actually described.  This constitutes a false certification and, because Defendants received a government payment in return for this false certification, it is an FCA violation.[7]

---

[7]"[A] claim under the False Claims Act can be false where a party merely falsely certifies compliance with a statute or regulation as a condition to government payment." *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1171 (9th Cir. 2006) (deeming valid a false certification theory for FCA liability because the defendant "falsely certifie[d] each year that it [was] in compliance with the [regulation] while intentionally and knowingly violating that requirement"); *see United States ex rel. Kester v. Novartis Pharm. Corp.*, 41 F. Supp. 3d 323, 336-37 (S.D.N.Y. 2014) (concluding that the Government adequately alleged false certification claims under the FCA by alleging that defendants submitted CMS forms to Medicare Part B, certifying that they complied with the statute when they did not, in fact, comply); *Mikes v. Straus*, 274 F.3d 687,

CIVIL ACTION NO.:                          PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

-17-

The TAC alleges that "[i]n order to receive the payments provided under the PQRS program for 2011, RIC was required to provide data for a twelve-month period or the period January 1, 2011 to December 31, 2011." TAC ¶ 162. The data reported states that the relevant time period covered was January 2011 to December 2011, and yet the data only actually includes patient encounters in September, October, November, and December 2011. Defendants falsely certified that the data they submitted covered the entire twelve-month period, when they knew that it only actually covered a four-month period.

In their Motion, Defendants stress that "the TAC adds no new allegations" to sufficiently allege how the falsified PQRS reporting constituted fraud. Mot. at 18-19. That simply is not true. The TAC includes additional allegations and is sufficiently clear. It alleges that RIC, as a voluntary participant in the PQRS program, was required to submit and did submit data on quality measures for covered Physician Fee Schedule Services provided to Medicare Part B Fee for Service beneficiaries. TAC ¶ 161. In exchange for providing data for a twelve-month period, RIC would receive specified incentive payments. *Id.* RIC did provide data on quality measures to CMS, but falsely certified that the data they submitted was for the entire twelve-month period, a condition required for RIC to receive the payments. *Id.* ¶ 163-64. Plaintiffs then allege that RIC received a payment from CMS which was "predicated upon receipt of data for a full year." *Id.* ¶ 165. However, RIC did not provide a full year's worth of data—it only provided

---

697-700 (2d Cir. 2001) (finding that false certification applies when "governing federal rules . . . are a precondition to payment"). Here, Defendants falsely certified that they complied with the PQRS requirements, a condition to their receipt of government payment.

CIVIL ACTION NO.:                              PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)                         TO MOTION TO DISMISS

-18-

1   four months' worth of data.  This fully explains Defendants' concern about "how"

2   the false representations were made.  Mot. at 19.  RIC (1) was required to report

3   data for a twelve-month period, (2) did submit data to CMS required by the PQRS

4   program, (3) certified that the data in fact reflected the full twelve months, but (4)

5   only submitted four months' worth of data to CMS.  These allegations are more

6   than sufficient to satisfy Rule 9(b).

7

8   **B.    The Court Should Deny Defendants' Motion Because the TAC**
            **Sufficiently Alleges that Defendants Violated Both the CA-FCA**
9           **and the CA-IFPA**

10          1.    Defendants Violated California's Discriminatory Billing Rule
                  by Charging Medi-Cal Patients More than Non-Medi-Cal
11                Patients for the Same Services

12       California's discriminatory billing rule prohibits providers from "bill[ing] or

13   submit[ting] a claim for reimbursement for the rendering of health care services to a

14   Medi-Cal beneficiary in any amount greater or higher than the usual fee charged by

15   the provider to the general public for the same service." 22 Cal. Code Regs. §§

16   51480(a), 51501; Order at 20-21.  Defendants argued, and the Court agreed, that

17   "California law permits physicians to give discounts to patients who are reasonably

18   believed to be ineligible for insurance reimbursements or Medi-Cal."  Order at 21

19   (citing Cal. Bus. & Prof. Code §657(c)).  However, Defendants mischaracterize

20   Plaintiffs' argument – Plaintiffs argue that Defendants charged Medi-Cal patients

21   the full reimbursable amount, even though the costs of the services they provided

22   Medi-Cal patients were clearly not as high as that reimbursable amount, as

23   evidenced by the fact that the RIC Defendants provided the same services to non-

24   Medi-Cal patients at a much lower rate.  *See* TAC ¶¶ 169-71.  It is inaccurate for

25

26   CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
27   2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

28                                  -19-

1  Defendants to suggest that non-Medi-Cal patients were receiving a "discount"

2  which the RIC Defendants legally had discretion to give.  It is not necessarily that

3  Defendants were charging the "usual fee" to Medi-Cal patients and giving a

4  discount to non-Medi-Cal patients; rather, Defendants were charging non-Medi-Cal

5  patients the usual, lower fee and charging Medi-Cal patients more than that usual

6  fee in order to receive a greater reimbursement.  This practice violates the

7  discriminatory billing rule.[8]

8       Plaintiffs sufficiently allege these facts in the TAC.  TAC ¶¶ 171-72.

9  Further, the TAC does "tether [this claim] to the allegedly unlawful practice of

10  charging uninsured patients lower fees for service."  Order at 21.  The TAC

11  discusses at length RIC's manipulation of its "usual fee" in order to charge Medi-

12  Cal patients more (and, consequently, non-Medi-Cal patients less), resulting in the

13  unlawful practice of Defendants charging Medi-Cal patients higher fees than they

14  charge the "general public."  *See* Order at 21-22; TAC ¶ 172.  RIC Defendants base

15  their "usual fee" on approximately 200% of the Medicare reimbursement rate, even

16  though the actual "usual fee" paid for services by RIC is much lower than that rate.

17  *Id.*  Further, "RIC charges Medi-Cal patients more than its purported 'usual fee' . . .

18  and RIC falsely reports its supposed 'usual fee' to justify such charges to Medi-

19   

---

20      [8]In *Physicians & Surgeons Laboratories, Inc. v. Department of Health*

21  *Services*, 8 Cal. Rptr. 2d 565 (Ct. App. 1992), the court addressed the
   discriminatory billing rule.  In that case, Respondent claimed that it "charge[d]

22  Medi-Cal a retail rate and then, by giving a discount for allegedly lower billing
   costs, charge[d] its provider-type clients a retail rate."  *Id.* at 576.  Because "[t]he

23  result [was] still to charge Medi-Cal an additional amount for billing," the court

24  found that the discriminatory billing rule "prohibited the use of respondent's dual

25  pricing schedule."  *Id.*  (citing 22 Cal. Regs. § 51502(b)).

26  CIVIL ACTION NO.:              PLAINTIFFS' MPA IN OPP.

27  2:13-cv-3772-DMG (MRWx)       TO MOTION TO DISMISS

28                           -20-

1  Cal." *Id.*  This practice violates the discriminatory billing rule, and sufficiently

2  alleges such a claim under Rule 9(b).

3       Defendants contradict themselves within two consecutive paragraphs of their

4  Motion, indicating that they are simply recycling their prior arguments.  Defendants

5  state that "Relators fail to identify a single service for which RIC billed a higher fee

6  to the Medi-Cal program than the fee billed to Medicare or private plans for the

7  same service."  Mot. at 21.  But, in the very next breath, Defendants outline one

8  such example, which Plaintiffs included in the TAC.  *Id.* at 21-22.  In the TAC,

9  Plaintiffs give an example of CPT 67028, which is the medical procedure code for

10  vitreous procedures on the posterior segment of the eye.  TAC ¶ 172; *see* AAPC

11  Coder, https://coder.aapc.com/cpt-codes/67028 (last visited Sept. 22, 2017).  If RIC

12  followed its standard practice for calculating a "usual fee" for this code, the "usual

13  fee" would have been approximately $250.  TAC ¶ 172.  But, RIC charges Medi-

14  Cal patients $370 for this code.  *Id.*  In fact, RIC claims that $370 is actually its

15  "usual fee" for this code, but clearly does so only so that it can receive the

16  maximum reimbursement from Medi-Cal.  *Id.*  This is a clear example of RIC

17  manipulating its "usual fees" so that it can charge Medi-Cal patients more, violating

18  the discriminatory billing rule.  These allegations are sufficient to state a claim.

19            2.   The TAC Sufficiently Alleges a Valid CA-IFPA Claim Based on
               Waivers of Commercial Plan Co-Payments and Deductibles

20       The Court granted Defendants' Motion to Dismiss the SAC on the ground

21  that Plaintiffs insufficiently alleged their claim under the CA-IFPA.  Under the CA-

22  IFPA, "it is unlawful to submit a false or fraudulent claim for payment to an insurer,

23  or to make false or fraudulent statements in connection with such claims."  Order at

24  22; *see* Cal. Penal Code § 550(a)(1), (6), (9), (b)(1)-(2).  The Court found that

25

26  CIVIL ACTION NO.:             PLAINTIFFS' MPA IN OPP.

27  2:13-cv-3772-DMG (MRWx)     TO MOTION TO DISMISS

28                       -21-

1  Plaintiffs alleged a "theory of improper and routine co-payment waivers without
2  regard to the patient's financial standing" but that Plaintiffs subsequently "fail[ed]
3  to identify either specific instances or a time range in which RIC improperly waived
4  a *commercial* plan patient's co-payment or deductible as opposed to that of a
5  Medicare patient."  Order at 23.  The TAC includes these allegations.

6          The TAC reiterates the allegations in the SAC that "[a]pproximately one-
7  third of RIC patients had commercial insurance coverage" and that those
8  commercial insurance plans "require that the patient be charged and pay a
9  deductible and/or a co-payment before a benefit is payable under the plan."  TAC ¶
10  178.  The TAC goes on to allege that "Defendants routinely waived co-payments
11  and deductibles for patients with commercial insurance coverage," and that
12  "[w]aivers of co-payments and deductibles were regularly and commonly made for
13  patients who had commercial insurance coverage."  *Id.* ¶ 179.  Further, it alleges
14  that "[w]hen submitting claims to commercial carriers for these patients, the RIC
15  Defendants and Providers listed the co-payment amounts and actually or impliedly
16  represented that they were charging the required co-payments or deductibles, when
17  they were not."  *Id.*  The TAC details specific instances when RIC Defendants
18  improperly waived co-payments for patients who had commercial insurance plans.
19  *Id.*  These allegations also are sufficient to satisfy Rule 9(b) and to fill in the
20  missing pieces of the claim, as identified by the Order.

21          Defendants continue to incorrectly suggest that the allegations, which the
22  Court determined were sufficient for a CA-IFPA claim, are not enough.  Defendants
23  state that this claim must fail because Plaintiffs "do not allege that such waivers
24  were specifically barred by a state law equivalent to the AKS" and because

25

26  CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
27  2:13-cv-3772-DMG (MRWx)              TO MOTION TO DISMISS

28                                    -22-

1   Plaintiffs do not "specifically describe the specific healthcare plan contract
2   provisions governing RIC's alleged duty to collect copayments."  Mot. at 23-25.
3   Defendants describe at length the allegations that Plaintiffs did not include, but
4   make no plausible argument for why such additional allegations would need to be
5   included.  Plaintiffs amended the SAC to allege facts required to sufficiently state a
6   CA-IFPA claim according to the guidance of the Court's Order.  Defendants'
7   suggestion that these allegations are, somehow, not enough simply demonstrates
8   that Defendants will argue anything that they can to avoid adjudicating these claims
9   on the merits and based upon evidence.

10  **V.    CONCLUSION**

11          For the foregoing reasons, Plaintiffs respectfully request that this Honorable
12  Court deny Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint in
13  its entirety.

14

15  Dated: September 29, 2017          Respectfully submitted,

16                                     SHEPHERD, FINKELMAN, MILLER
                                         & SHAH, LLP
17
                                       /s/ **Kolin C. Tang**
18                                     Kolin C. Tang
                                       11755 Wilshire Boulevard, 15th Floor
19                                     Los Angeles, CA 90025
                                       Phone: (323) 510-4060
20                                     Facsimile: (866) 300-7367
                                       Email:  ktang@sfmslaw.com
21
                                       James E. Miller
22                                     Laurie Rubinow
                                       Shepherd Finkelman Miller
23                                     & Shah, LLP
                                       65 Main Street
24                                     Chester, CT 06412
                                       Telephone: (860) 526-1100
25

26  CIVIL ACTION NO.:                  PLAINTIFFS' MPA IN OPP.
27  2:13-cv-3772-DMG (MRWx)            TO MOTION TO DISMISS

28                                     -23-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
        lrubinow@sfmslaw.com


Monique Olivier
Duckworth Peters Lebowitz Olivier, LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone (415) 433-0333
Fax: (415) 449-6556
Email: monique@dplolaw.com

***Attorneys for Plaintiffs-Relators***

CIVIL ACTION NO.:                    PLAINTIFFS' MPA IN OPP.
2:13-cv-3772-DMG (MRWx)               TO MOTION TO DISMISS

-24-