Mark Hardiman (SBN 136602)
Salvatore Zimmitti (SBN 245678)
Jonathan Radke (SBN 257324)
**NELSON HARDIMAN LLP**
11835 West Olympic Boulevard, Suite 900
Los Angeles, CA 90064
Telephone:    (310) 203-2800
Facsimile:     (310) 203-2727
Emails: mhardiman@nelsonhardiman.com
           szimmitti@nelsonhardiman.com
           jradke@nelsonhardiman.com

Attorneys for Defendants

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORINA, *ex rel* BOBBETTE A. SMITH and SUSAN C. ROGERS, <br><br> Plaintiffs, <br><br> v. <br><br> TOM S. CHANG, M.D., TOM S. CHANG, M.D., INC., MICHAEL A. SAMUEL, M.D., MICHAEL J. DAVIS, M.D., RETINA INSTITUTE OF CALIFORNIA MEDICAL GROUP, CALIFORNIA EYE AND EAR SPECIALISTS, BRETT BRAUN and SAN GABRIEL AMBULATORY SURGERY CENTER LP, <br><br> Defendants. | CASE NO.:   Case # 2:13-cv-3772-DMG (MRWx) <br><br> Hon. Assigned to Judge Dolly M. Gee <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS REALTORS' THIRD AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF PROCEDURE 12(B)(6) AND 9(B); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> DATE:   October 20, 2017 <br> TIME:    9:30 am. <br> CTRM:  8C |

Defendants Tom S. Chang,  M.D., Tom S. Chang, M.D., Inc., Michael A.
Samuel, M.D., Michael J. Davis, M.D. (collectively the "RIC Partners"), Brett
Braun, Retina Institute of California Medical Group ("RIC" and collectively with
RIC Partners as "RIC Defendants"), California Eye and Ear Specialists ("CEES"),
and San Gabriel Ambulatory Surgery Center LP ("SG-ASC," and collectively
"Defendants"), by and through their attorneys of record, hereby submit their reply

371534.1

1  in support of their motion to dismiss the Third Amended Complaint of Relators

2  Bobbette A. Smith and Susan C. Rogers, alleging violations of the federal False

3  Claims Act, 31 U.S.C. §§ 3729 *et seq.*, ("FCA"), the California False Claims Act,

4  Cal. Gov. Code §§ 12650 *et seq.* ("CA- FCA"), and the California Insurance

5  Frauds Prevention Act, Cal. Insurance Code § 1871.7 ("CA-IFPA"), for failure to

6  state a claim and to allege fraud with sufficient particularity pursuant to Federal

7  Rules of Civil Procedure Rule 12(b)(6) and 9(b).

8  This reply is based on the accompanying memorandum of points and

9  authorities, the files and records in this case, and on such further evidence and

10  argument as may be presented at any hearing of this motion.

11  Respectfully submitted,

12  Dated:  October 6, 2017          NELSON HARDIMAN LLP

13

14

15  By: */s/ Mark Hardiman*
    _____
        Mark Hardiman

16

17

18

19

20

21

22

23

24

25

26

27

28

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

371534.1

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO  DISMISS THIRD AMENDED COMPLAINT**

1

# **TABLE OF CONTENTS**

2

3    I.    INTRODUCTION ................................................................................. 1

4    II.   ARGUMENT ........................................................................................ 1

5          A.    PLAINTIFFS' KICKBACK ALLEGATIONS DO NOT
                  SATISFY RULE 9(B). ............................................................... 1

6          B.    THE TAC ALLEGES NO FACTS DEMONSTRATING
7                 THAT MEDICARE CLAIMS RESULTED FROM
                  ILLEGAL REFERRALS TO SG-ASC OR THAT RIC
                  AND CEES PHYSICIANS WERE OFFERED
8                 ANYTHING OF VALUE TO REFER PATIENTS TO
9                 THE CENTER. .......................................................................... 5

           C.    RELATORS' ALLEGATIONS CHALLENGING THE
10                MEDICAL NECESSITY OF DEFENDANTS' ICG
                  TESTING FAIL TO SATISFY RULE 9(B) AND
11                CONFLICT WITH MEDICARE'S COVERAGE
                  DETERMINATION. .................................................................. 8
12
           D.    THE TAC FAILS TO SUFFICIENTLY ALLEGE ANY
13                FRAUDULENT SUBMISSION OF PQRS DATA. ................ 10

14         E.    THE COMPLAINT FAILS TO STATE A VALID
                  CALIFORNIA FCA CLAIM AGAINST
                  DEFENDANTS ...................................................................... 13
15
           F.    THE TAC FAILS TO STATE A CA-IFPA CLAIM
16                BASED ON WAIVER OF CO-PAYS AND
                  DEDUCTIBLES. .................................................................... 14
17
           G.    THESE SIX TAC CAUSES OF ACTION OR LEGAL
18                THEORIES OF LIABILITY SHOULD BE DISMISSED
                  WITHOUT LEAVE TO AMEND ............................................ 16
19
     III.  CONCLUSION .................................................................................. 17
20

21

22

23

24

25

26

27

28

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

371534.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. 1995), *cert. denied*, 516 U.S. 1051 (1996) ..................... 16

*Chesbrough v. VPA, P.C.*,
  655 F.3d 461 (6th Cir. 2011) ................................................................ 10

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) .................................................................. 6

*Frazier ex rel. U S. v. Iasis Healthcare Corp.*,
  392 Fed. Appx. 535, 2010 WL 3190641 .......................................... 10

*Hanlester Network v. Shalala*,
  51 F.3d 1390 (9th Cir. 1995) ................................................................... 2

*Health Services v. U.S. ex rel. Escobar*,
  136 S. Ct. 1989 (2016) ............................................................................ 10

*Hollinger v. Titan Capital Corp.*
  914 F.2d 1564, 1575 (9th Cir. 1990) .................................................. 16

*Maa v. Ostroff*,
  2013 WL 1703377 (N.D. Cal. Apr. 19, 2013) ................................... 10

*Mikes v. Straus*,
  274 F.3d 687 (2nd Cir. 2001) ................................................................ 10

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) .............................................................. 16

*U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.*,
  764 F.3d 699 (7th Cir. 2014) ................................................................ 10

371534.1

ii

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO  DISMISS THIRD AMENDED COMPLAINT**

*U.S. ex rel. Lee v. Smithkline Beecham, Inc.*,
    245 F.3d 1048 (9th Cir. 2001) ........................................................ 16

*United States ex rel. Billotta v. Novartis Pharm. Corp.*,
    50 F. Supp. 3d 497 (S.D.N.Y. 2014) ............................................... 4

*United States ex rel. Parikh v. Citizens Med. Ctr.*,
    977 F. Supp. 2d 654 (S.D. Tex. 2013) ............................................ 4

*United States ex rel. Pogue v. American Healthcorp, Inc.*,
    977 F. Supp. 1329 (M.D. Tenn. 1977) ........................................ 7, 8

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am.*,
    565 F. Supp. 2d 153 (2008) ............................................................ 8

*United States ex rel. Solis v. Millennium Pharm., Inc.*,
    2015 WL 1469166 (E.D. Cal. Sept. 1, 2015) ............................... 3, 4

*U.S. ex rel. Thompson v. Columbia/ HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ....................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981, 1007 (9th Cir. 2009) ............................................. 16

**States, Regulations and Rules**

False Claims Act, 31 U.S.C. §§ 3729 et seq. .................................... *passim*

California False Claims Act, Cal. Gov. Code §§ 12650 *et seq.* ............... 1

California Insurance Frauds Prevention Act, Cal. Insurance Code § 1871.7 ..... 14,15

22 C.C.R. § 51480(a) .......................................................................... 13

Federal Rules of Civil Procedure Rule 12(b)(6) ............................... 1, 17

Federal Rules of Civil Procedure 9(b) ............................................. *passim*

371534.1

iii

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO DISMISS THIRD AMENDED COMPLAINT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

While Relators' Third Amended Complaint ("TAC") attempts to cure the deficiencies of the sixth causes of action or theories of liability identified by this Court in its July 25, 2017 order dismissing them as alleged in the Second Amended Complaint ("SAC") for failure to state claim or to allege fraud with particularity pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and 9(b), they have failed to do so after four pleading attempts for the reasons described below. Accordingly, these six causes of action and legal theories should now be dismissed with prejudice.

## II.   ARGUMENT

## A.   PLAINTIFFS' KICKBACK ALLEGATIONS DO NOT SATISFY RULE 9(B).

Relators' federal FCA claim premised on a violation of the AKS still fails to adequately plead the element of inducement.  While Relators have added more details about the dates and amounts of certain marketing expenditures, Relators completely fail to allege any facts connecting such "remuneration" to any actual referrals or even the expectation of referrals. Instead, the TAC avers that the free dinners, tickets, gift cards, and continuing education programs were offered to outside physicians in an indiscriminate manner, which at best indicates that RIC marketed itself to potential referral sources widely in the hopes of *encouraging* their use of RIC's services – something that is perfectly legal in this Circuit and does not state a claim under the AKS as a matter of law.

Nevertheless, Relators primarily argue that the TAC sufficiently alleges inducement under the AKS because of their "detailed" chart listing "the date, amount, and description of each gift or event, and the identity of the Referring Practitioner who received the gift(s), if known."  Opposition ("Opp.") at 7.  They argue that such detail is sufficient, particularly when coupled with their conclusion

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

371534.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

1    that these items were offered "with the purpose of inducing and in return for

2    receiving patient referrals," and "combined with the promise of the co-payment

3    waivers, induced physicians to refer their patients to RIC."  Relators are incorrect.

4        First, Relators' suggestion that their allegations gain additional legal

5    purchase when "combined with the promise of the copayment waivers" supposedly

6    designed to "induce[] physicians to refer their patients to RIC" is frivolous. Opp. at

7    7.  As Defendants made clear in their Motion, <u>the Court already rejected the notion</u>

8    <u>that these copay waivers could serve as inducement to physicians</u> because the

9    Court properly recognized that the benefit of such waivers accrues to the *patients*,

10   not the physicians.  *See* 7/25/17 Order at 12.  As such, "combining" this rejected

11   theory with their other allegations does nothing other than highlight Relators' clear

12   disregard for this Court's Order.

13       In addition, notwithstanding Relators' more detailed allegations in the TAC

14   regarding certain "gifts" provided by RIC, they still fail to pass Rule 9(b) muster

15   for the simple reason that they all hang on the assumption that such "remuneration"

16   was offered for and in return for patient referrals.  Opp. at 7.  As explained by

17   Defendants, the AKS does not prohibit RIC from marketing its services to

18   physicians and other potential referral sources. Indeed, in this Circuit, RIC is

19   entitled to "encourage" physicians to refer patients through free marketing dinners

20   and events so long as this does not cross the line of inducement, which has been

21   defined as the "intent to exercise influence over the reason or judgment of another

22   in an effort to cause the referral of program-related business."  *See Hanlester*

23   *Network v. Shalala,* 51 F.3d 1390, 1398 (9th Cir. 1995).

24       In this case, the best Relators can do is to provide a laundry-list of various

25   examples of non-monetary remuneration allegedly provided by Defendants as part

26   of RIC's broad marketing to potential referral sources.  However, no amount of

27   detail can overcome the complete absence of facts indicating that these "gifts"

28   were intended to induce patient referrals.  There are no allegations, for example,

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO DISMISS THIRD AMENDED COMPLAINT**

showing that physicians received gift cards, tickets, free dinners and drinks, or free "Okularfest" program invitations based on the volume or value of referrals. In fact, the TAC fails to identify even one single referral that resulted from any of the alleged remuneration. *See* TAC ¶ 76-77, 80. The same is true for Relators' allegation that Defendants somehow "arranged" for biotechnology companies and "other venders" to pay for meals and training for physicians in an effort to induce referrals to RIC, rather than (more plausibly) to refer business to the vendors themselves. TAC ¶ 78. In sum, all that Relators have alleged to date is that RIC has incurred expenses in broadly marketing its services to potential referrals sources, which does not state an AKS violation nor satisfy Rule 9(b).

In addition, Relators' opposition offers no authority for the proposition that a detailed account of marketing expenditures, without facts indicating that those marketing efforts were intended to induce referrals, is sufficient to support an AKS claim. On the contrary, their authorities prove Defendants' point. For example, the main case cited by Relators in their Opposition, *United States ex rel. Solis v. Millennium Pharm., Inc.*, 2015 WL 1469166, * 6 (E.D. Cal. Sept. 1, 2015), did find inducement, but the defendant was alleged to have offered excessive speaker fees, honoraria, meals, attendance at seminars, and funded preceptorships *based on referrals*:

> The SAC provides both dates and details of these alleged kickback activities, including separate and specific meals, which Relator alleges that these activities violated both the FCA and the AKS. Id. at ¶¶ 114–116, 117, 123, 125–29. The SAC further provides examples of rewarding high-prescribing doctors with excessive speaker fees. Id. at ¶¶ 83–86, 122, and alleges that certain hospitals were tracked in order to determine which "to target for expensive meals." Id . at ¶¶ 118–121. According to Relator, Moving Defendant's sale representatives were also instructed to send "invitations to lavish meals exclusively to targeted high volume prescribers or referral sources." Id. at ¶ 121. In light of all these activities, Relator alleges that the submissions of prescriptions for reimbursement were false because Defendants' illegal activities had influenced them. Id. at ¶¶ 22–23.

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

371534.1

3

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

1   2015 WL 1469166, at *6.  Similarly, in *United States ex rel. Billotta v. Novartis*
2   *Pharm. Corp.*, 50 F. Supp. 3d 497, 520 (S.D.N.Y. 2014), inducement was found,
3   but again, the complaint alleged that the drug company compensated its marketing
4   representatives, who offered "lavish," "sham" events to doctors, by basing those
5   marketers' compensation on the number of prescriptions that doctors wrote for the
6   drug, and the complaint alleged further that doctors were paid additional
7   compensation to be speakers "based on the number of prescriptions they wrote for
8   Novartis drugs."  50 F. Supp. 3d at 515-516.  Also unpersuasive is Relators'
9   attempt to distinguish Defendants' authority.  As Relators admit, in *United States*
10  *ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654 (S.D. Tex. 2013), the
11  Court held that, notwithstanding the detailed recitation of the free items allegedly
12  offered as remuneration by the defendant, these allegations remained insufficient
13  because they did not "fully explain how the alleged scheme…[was] supposed to
14  work."  *Id.* at 674-75.  Relators claim this fact distinguishes *Parikh*, but the same is
15  true here.  The TAC fails to explain how any of the allegedly free dinners, gifts,
16  and other items work as remuneration designed to induce referrals when Relators'
17  own allegations reveal that they were offered to potential referral sources
18  indiscriminately, without any apparent regard for the value, volume, or even the
19  likelihood of receiving a single referral from any of the identified physicians to
20  RIC.

21       Lastly, Relators urge that even though a single dinner with drinks offered to
22  a potential referral source may not amount to an intent to "exercise influence over
23  the reason or judgment" over that physician, this Court should still presume it does
24  by accepting Relators' additional conclusory statements that these examples were
25  not "isolated" but rather part of a "coordinated effort to induce referrals" and
26  expose a "consistent pattern and practice."  Opp. at 9-10.  Yet this suggestion puts
27  the cart before the horse.  In the absence of basic facts first demonstrating that any
28  of these items were offered in exchange for referrals, the only "consistent practice"

371534.1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT

or "coordinated effort" that can legitimately be inferred from the TAC is a lawful one whereby RIC broadly marketed to potential referrals sources without regard for those physicians' actual referrals or likelihood of referring patients in return.

**B.   THE TAC ALLEGES NO FACTS DEMONSTRATING THAT MEDICARE CLAIMS RESULTED FROM ILLEGAL REFERRALS TO SG-ASC OR THAT RIC AND CEES PHYSICIANS WERE OFFERED ANYTHING OF VALUE TO REFER PATIENTS TO THE CENTER.**

With respect to referrals to the San Gabriel Ambulatory Surgery Center ("SG-ASC"), the TAC still fails to adequately plead that Medicare claims resulted from illegal referrals to SG-ASC or that RIC and CEES physicians were offered anything of value to refer patients to SG-ASC. The TAC presents only the speculative chance that an actual Medicare claim resulting from a RIC or CEES physician referral was submitted, based primarily on the allegation that "financial records" supposedly reveal that roughly "25%" of SG-ASC's patients were Medicare patients.   But the mere possibility of a claim being submitted to Medicare resulting from a possible referral from a RIC or CEES physician is not enough under Rule 9(b).   Nor is it enough to allege in conclusory fashion that the thing of value offered in exchange for such hypothetical Medicare referrals was the RIC or CEES physicians' continued employment, which Relators allege was contingent upon referring cases to SG-ASC, absent facts demonstrating that these physicians' were in fact *required* to make such referrals.   No such facts are alleged anywhere in the TAC.

More specifically, this Court's July 25, 2017 order held that Relators had insufficiently alleged FCA liability regarding referrals to SG-ASC on two grounds: first, that Relators had provided insufficient information regarding actual patient referrals and any resulting Medicare claims (7/25/17 Order at 15) and second, because there were no "allegations that the RIC Defendants offered or paid RIC

1    and CEES referring physicians anything of value in exchange for referrals to

2    SGASC, or as a condition of employment." *Id.*  The same holds true for the TAC.

3          As to the first point, Relators insist they have done enough by, essentially,

4    making several assumptions in successive order, i.e., that (1) patients were

5    "referred to SG-ASC by the RIC Defendants, RIC itself, and CEES," (2) "a

6    number of claims were submitted for reimbursement to Medicare, Medicaid and

7    other Government Healthcare Programs," and (3) "claims were submitted for

8    reimbursement to Medicare [and other government programs] with respect to the

9    Medicare patients referred to SG-ASC by RIC and CEES."  Opp. at 10-11, citing

10   TAC ¶ 107.  But stringing together a series of conclusory allegations does not

11   logically or plausibly add up to one single factual allegation tying SG-ASC's

12   treatment of any particular Medicare patient to any allegedly illegal referral made

13   by the RIC partners or other RIC or CEES physicians. *See* Motion at 12.  Nor does

14   stacking such conclusions constitute "reliable indicia" that such claims were

15   submitted as Relators contend. *See* Opp. at 11.

16         For a pleader to receive the benefit of a "strong inference" based on "reliable

17   indicia," Relators still need to "allege 'particular details of a scheme to submit

18   false claims.'" *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir.

19   2010), *citing United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180,

20   190 (5th Cir. 2009).  In other words, Relators still must satisfy the basic thrust of

21   Rule 9(b) by "pleading with particularity a reasonable basis to infer that the

22   government either paid money or forfeited moneys due." *Ebeid*, 616 F. 3d at 999

23   fn. 4.  In this case, the TAC alleges only the speculative chance that any given

24   Medicare claim submitted for payment resulted from a RIC or CEES physician

25   referral (among other referral sources) based on the allegation that "over 25%" of

26   SGASC's patients were Medicare beneficiaries. *See* TAC at ¶ 107.  The fact that

27   one quarter of SG-ASC's patients may have been Medicare beneficiaries, however,

28   still does not establish that one claim was actually submitted to Medicare based on

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO DISMISS THIRD AMENDED COMPLAINT**

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

a referral from a RIC or CEES physician, much less form any "reasonable basis to infer that the government either paid money or forfeited moneys due." Once again, Relators have offered "simply too little information about the [Medicare] referrals made and the [Medicare] claims submitted to comply with the particularity requirements of the Federal Rules of Civil Procedure." 7/25/15 Order at 15.

The TAC also fails on the independent ground that it contains no facts demonstrating that the RIC Defendants offered or paid RIC and CEES referring physicians anything of value in exchange for referrals to SG-ASC. The best Relators can do is to conclude that RIC and CEES physicians were "required to refer patients to SG-ASC *as a condition of employment*." Opp. at 11; TAC ¶ 11 (emphasis added).[1] But such a bare conclusion, absent factual support, cannot satisfy the particularity requirement of Rule 9(b) when the TAC says nothing about the details of RIC and CEES physicians' employment contracts. Other than suggesting that RIC encouraged physicians to referral cases to SG-ASC, there are no facts supporting any reasonable inference that any physician's employment was contingent upon making such referrals. For example, Relators do not identify any written or oral communications by Defendants to these physicians regarding this alleged referral requirement. Nor does the TAC identify a specific instance where a RIC or CEES physician referred a patient to SG-ASC solely because of this supposed employment requirement, or, alternatively, a case where a physician was disciplined or reprimanded for failing to refer cases consistent with such requirement. Absent actual facts, Rule 9(b) cannot be circumvented by inserting the conclusory statement that referrals were required as a condition of employment, and Relators provide no persuasive authority suggesting otherwise.[2]

---

[1] Relators appear to have inserted this Court's own language from the July 25, 2017 Order into the TAC verbatim. *See* 7/25/17 Order at 15.

[2] Relators attempt to analogize this case to U*nited States ex rel. Pogue v. American Healthcorp, Inc.*, 977 F. Supp. 1329, 1332-33 (M.D. Tenn. 1977). Opp. at 11 fn. 3. However, *Pogue* is an out of district case and is easily distinguished because the complaint there alleged substantial detail regarding the nature of the physicians'

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO  DISMISS THIRD AMENDED COMPLAINT**

1   Thus, even if Relators did adequately plead "reliable indicia" that SG-ASC
2   submitted Medicare claims resulting from referrals made by the RIC or CEES
3   physicians, the FCA claim must be nonetheless be dismissed because the TAC
4   points to nothing of value that was offered in exchange for those referrals.

**C.   RELATORS' ALLEGATIONS CHALLENGING THE MEDICAL NECESSITY OF DEFENDANTS' ICG TESTING FAIL TO SATISFY RULE 9(B) AND CONFLICT WITH MEDICARE'S COVERAGE DETERMINATION.**

8   Defendants' claim of medically unnecessary ICG testing is also no stronger
9   in the TAC.   Notwithstanding this Court's clear instruction that Relators must
10  allege "why" RIC's ICGs were medically unnecessary, as opposed to being
11  inconsistent with Relators' view of the standard of care, the TAC dodges the
12  question altogether and insists that even if ICGs are medically valid, Defendants
13  did not "use" the test results in evaluating or treating patients, thus making them
14  medically unnecessary and worthless.   But this is just another factually
15  unsupported conclusion, and one that is flatly contradicted by Medicare's own
16  Local Coverage Determination ("LCD") acknowledging that ICGs are a legitimate
17  tool in the diagnosis, evaluation and treatment of wet AMD.

18  In particular, in its July 25, 2017 Order, this Court dismissed Relators' FCA
19  claim in the SAC based on RIC's Medicare claims for ICG tests (CPT Code
20  92240) that were allegedly medically unnecessary because of Relators' failure "to
21  allege a critical component of this type of FCA claims: <u>why</u> the ICG tests are

---

23  contracts, including specific allegations that commissions were paid "based on the
24  number of diabetes patients admitted to the medical center" and "physicians' compensation under these contracts was based…upon the ability of the physicians to refer large numbers of diabetes patients to the center."   977 F.Supp. at 1332.
25  The case of *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am.*, 565 F.
26  Supp. 2d 153 (2008), another out of district case cited by Relators, is even further afield since it did not address a Rule 9(b) challenge, considered a motion for
27  summary judgment rather than a motion to dismiss and, in that case, the "Defendant made clear to its medical directors that their compensation and
28  continuing employment was inextricably linked to the number of patients they provided to the centers."   *Id.* at 165.

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

371534.1

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO  DISMISS THIRD AMENDED COMPLAINT**

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

1    medically unnecessary - as opposed to that they are more lucrative, riskier, or not

2    the normal standard of care." 7/25/17 Order at 17 (emphasis added).  The TAC

3    fares no better, and, in addition to failing to explain why the ICG testing was not

4    medically justified or was medically worthless, collides with Medicare's LCD for

5    ICGs, which confirms the medical validity of ICGs for the diagnosis, evaluation

6    and treatment of wet AMD.  *See* Motion at 13-18; *see also* Defendants' Request

7    for Judicial Notice ("RJN") filed concurrently therewith.

8         In response, despite forcefully alleging in the TAC that ICGs as a

9    "diagnostic tool…provides no medically necessary data for the AMD treatment

10   method" (TAC ¶ 135), Relators' Opposition now retreats and concedes that ICGs

11   are in fact a legitimate test for wet AMD, and such testing is in fact reimbursable

12   by Medicare, *just not in this case*.  *See* Opp. at 15-16.  Specifically, Relators

13   contend the reason "why" Defendants ICGs do not fall within the so-called

14   "limited circumstances" where ICGs are medically justified is because "the RIC

15   Defendants *do not use* the ICG testing data results to evaluate or treat their AMD

16   patients, except in rare circumstances."  Opp. at 16, citing TAC ¶¶ 135-136

17   (emphasis added).  But this allegation does not provide the requisite "why" that

18   this Court requested and simply switches from one factually unsupported

19   conclusion to another since Relators offer no facts demonstrating that Defendants

20   did not actually "use" the ICG testing data.

21        Predictably, Relators try to fill this factual void by expounding on their

22   previous allegations relying on a DOJ expert review of Defendants' ICGs (which

23   this Court already considered in the SAC and found insufficient) allegedly finding

24   that the ICG testing results were not used by Defendants based on the "short"

25   visitation intervals between patient visits and because Defendants purportedly

26   "relied on OCT findings and not the ICG data to treat their patients." Opp. at 14,

27   *citing* TAC ¶¶ 136-139.  However, Relators' reliance on these *second-hand*

28   conclusions is still insufficient to satisfy Rule 9(b) absent any actual facts

1    anchoring these "expert" opinions to the clinical facts of any particular case and

2    explaining why the ICGs would not be covered under the LCD's relevant coverage

3    criteria.  *See Frazier ex rel. U S. v. Iasis Healthcare Corp.*, 392 Fed. Appx. 535,

4    2010 WL 3190641, at *l (9th Cir. 2010) (FCA complaint properly dismissed where

5    relator's "allegations regarding medically unnecessary procedures were conclusory

6    at best"); *US. ex rel. Thompson v. Columbia/ HCA Healthcare Corp.*, 125 F.3d

7    899, 903 (5th Cir. 1997) (FCA claim properly dismissed where relator failed to

8    provide factual basis for allegation that hospital chain submitted claims for

9    medically unnecessary services).

10         The same is true for Relators' circular conclusion that Defendants' use of

11   ICGs did not comport with the Medicare LCD because they "select[ed] ICG tests

12   for their patients in circumstances other than those for which LCDs consider ICG

13   tests 'medically necessary.'"  Opp. at 16.  This conclusion again says nothing

14   without any alleged facts explaining what "circumstances" Relators are referring

15   to.[3]  Accordingly, to the extent Relators' allegations are entitled to any weight,

16   they at most they reveal "a standard of care claim in disguise, which the Ninth

17   Circuit has held is not actionable." *Maa v. Ostroff*, 2013 WL 1703377, at *11

18   (N.D. Cal. Apr. 19, 2013).

19   **D.    THE TAC FAILS TO SUFFICIENTLY ALLEGE ANY**
     **       FRAUDULENT SUBMISSION OF PQRS DATA.**
20

21         Relators' meandering allegations concerning the PQRS Program are no

22   better, and represent a classic failure to satisfy Rule 9(b).  Rather than pleading

23   additional facts demonstrating that a fraudulent representation was actually made

24

25   [3] Relators' "medically worthless" allegations do not add anything to the TAC.
     Relators do not even bother to explain how Defendants' ICG testing was so
26   deficient that it was equivalent to "no performance at all," *see Mikes v. Straus*, 274
     F.3d 687, 697 (2nd Cir. 2001) *abrogated on other grounds, Universal Health*
27   *Services v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016); *U.S. ex rel. Absher v.*
     *Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 709-710 (7th Cir. 2014);
28   *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468-469 (6th Cir. 2011), other than to say
     again that Defendants supposedly *did not use* the results of the ICGs.  Opp. at 17.

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

371534.1

**DEFENDANTS' REPLY IN SUPPORT OF MOITION TO  DISMISS THIRD AMENDED COMPLAINT**

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

1   when RIC submitted its PQRS data, Relators continue to make impenetrably vague

2   and conclusory statements about supposed submission requirements and

3   submission criteria violated by RIC, without any context or explanation of how,

4   when and why they apply in this case and demonstrate fraud.   The fact that

5   Relators end up largely abandoning virtually all of their allegations by ignoring

6   them in their Opposition only demonstrates that they, like Defendants, are at a total

7   loss as to how/what RIC allegedly submitted to the PQRS Program inaccurately,

8   much less fraudulently.

9        In its July 25, 2017 Order, the Court dismissed Relator's FCA claim based

10  on Defendants' submission of allegedly false PQRS data for 2011 and 2012 on

11  several grounds.[4]   The TAC not only fails to address these grounds, it attempts to

12  distract this Court with a "moving target" by adding new and irrelevant conclusory

13  matter that even Relators do not bother to explain, much less defend in their

14  Opposition.   With respect to the <u>2012</u> PQRS submission, the Court dismissed

15  Relators' claim because "[t]he only factual allegation related to the allegedly

16  fraudulent 2012 submission is that 'certain of the information reported was for

17  activities that had not actually occurred,'" and this allegation was too "vague and

18  conclusory" to satisfy Rule 9(b).  *Id.*  Despite this clear ruling, however, <u>the TAC</u>

19  <u>adds no new allegations to support this 2012 submission</u> and merely re-alleges the

20  same exact "vague and conclusory" phrase the Court found insufficient in the first

21  place.  *Compare* SAC ¶ 135 *with* TAC ¶ 163.  Relators' Opposition conveniently

22

23  [4] First, the Court found that the "SAC does not establish that the RIC Defendants
    submitted partial data but certified that such data reflected the 12-month period,"
24  because "if Defendants only had four months of data to submit, and they certified
    that the information was complete, it is not clear to the court how such a
25  certification can amount to fraud." 7/25/17 Order at 20. The Court also found that
    Relators' allegation that the RIC Defendants unlawfully retained a $60,000 PQRS
26  payment was similarly deficient because it was "not clear from the SAC that the
    $60,000 was an overpayment, as opposed to a reduced payment sent in light of the
27  reduced reporting months." *Id.*  Lastly, the Court found that "[t]he only factual
    allegation related to the allegedly fraudulent 2012 submission is that 'certain of the
28  information reported was for activities that had not actually occurred,'" and this
    allegation was too "vague and conclusory" to satisfy Rule 9(b). *Id.*

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

1    ignores this and refuses to even mention the 2012 PQRS submission in the TAC,

2    presumably because they realize that these allegations should have been deleted

3    from the TAC absent factual support.  *See* Opp. at 17-19.[5]  Relators' FCA claim

4    for the 2012 submission should therefore be dismissed without leave to amend.

5         Also not mentioned anywhere in the Opposition is Relators' new allegation

6    in the TAC that RIC "falsely certified that, for each of the reporting RIC

7    Physicians, 80% of the Medicare cases had been entered when they had not been

8    entered."  TAC ¶ 164.  Defendants explained that this allegedly fraudulent "80%"

9    certification theory had been "tossed into the TAC without any discussion, context

10   or detail," and therefore failed to provide any explanation of "how the 80%

11   requirement works, when it applies, how it is material to PQRS payments, and

12   what actual percentage (if not 80%) of Medicare cases was falsely reported by

13   RIC."  Motion at 20.  Relators' failure to address these points or defend this

14   conclusory statement is a concession that it is without factual support and should

15   not be credited.

16        Indeed, the only allegation Relators care to discuss in their Opposition is that

17   RIC falsely "represented that [the submitted 2011 PQRS data] was for a full year

18   (even though it was not)[.]"  TAC ¶ 164; *see* Opp. at 18-19.  But as Defendants

19   explained and Relators do not contest, this overly simplistic, conclusory statement

20   is woefully insufficient here because "Relators fail to explain how these false

21   representations were actually made."  Motion at 19.  Given the numerous methods

22   and ways PQRS data can lawfully be presented under the Program (*see* Motion at

23   19), Defendants are simply at a loss as to what exactly they reported inaccurately,

24   much less fraudulently.  This is precisely the type of vague accusation that Rule

25

26   ─────────────────────────
     [5] Relators deceptively argue that Motion claimed that the TAC added "no new
27   allegations" to the PQRS claims generally.  Opp. at 18. <u>This is clearly false</u>, since
     the Motion stated:  "*With respect to the 2012 PQRS submission*, the TAC adds no
28   new allegations to cure Relators' prior failure to satisfy Rule 9(b) and this FCA
     claim should therefore be dismissed without leave to amend."  Motion at 20 (italics
     added).

9(b) was intended to avoid, and Relators' refusal to offer this Court any further explanation to support it is an admission that it lacks a factual basis and should be dismissed.

## E. THE COMPLAINT FAILS TO STATE A VALID CALIFORNIA FCA CLAIM AGAINST DEFENDANTS.

Relators' CA-FCA claim based on theory that RIC violated the Medi-Cal discriminatory billing rule intentionally by miscalculating its charges is particularly misguided. Despite Relators' lengthy allegations about RIC's improper rate-setting, or the varying amounts that other payors, like Medicare, are willing to pay in response to RIC's charges, the billing rule neither mandates that a provider use any particular method when calculating its charge, nor requires a provider to calculate its charges based on the amounts other providers are willing to pay. The rule simply requires that providers *charge* the Medi-Cal program no more than they *charge* other payors for the same service. Here, the TAC fails for the simple reason that it identifies not one instance where this actually occurred.

Previously, this Court dismissed Relators' CA-FCA claim based on theory that Defendants violated the Medi-Cal discriminatory billing rule[6] by charging uninsured patients fees less than fees charged to Medi-Cal patients because "California law 'expressly authorize[s]' health care providers to provide services at lower rate for, *inter alia*, uninsured patients that would not be entitled to an insurance reimbursement." 7/25/17 Order at 21, citing Cal. Bus. & Prof. Code § 657(c). Forced to abandon that theory, Relators now try to stitch together a new theory that Defendants violated the billing rule by miscalculating its "usual charge" in a false or fraudulent manner that ends up violating the rule. *See* TAC ¶¶ 169-172. To the extent Defendants can make sense of these convoluted allegations,

---

[6] The rule is found in 22 C.C.R. section 51480(a), which states: "No provider shall bill or submit a claim for reimbursement for the rendering of health care services to a Medi-Cal beneficiary in any amount greater or higher than the usual fee **charged** by the provider to the general public for the same service." (Emphasis added.)

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

1  they do not state a claim under the CA-FCA as a matter of law.

2  At the outset, the TAC fails to satisfy Rule 9(b) because it fails to identify

3  even one example where RIC actually violated the rule by submitting a claim

4  *charging* higher rates to Medi-Cal beneficiaries relative to the general public or

5  other payors for the same exact service.  *See* TAC ¶¶ 169-172.[7]  The TAC's only

6  so-called "example" of RIC's discriminatory charge does not actually provide one,

7  and instead asserts that RIC's billed charge for CPT 67028, or its "usual fee," is

8  "$370" for this procedure.  TAC ¶ 172.  Putting aside how this charge was derived,

9  there is no allegation that RIC *charged* anything less than $370 to the general

10  public or other payors for the same service.  *See* TAC 172.  Further, it is irrelevant

11  how RIC calculated this charge, because there is nothing in the Medi-Cal billing

12  rule mandating that providers calculate billed charges to the "general public" for a

13  particular service in any particular way, so long as the resulting charge is not lower

14  than the fee charged to the Medi-Cal program.[8]  Accordingly, notwithstanding the

15  TAC's lengthy and confusing allegations about RIC's supposed departure from its

16  normal rate-setting procedure or calculations when deriving its charge amounts for

17  certain services, like CPT 67028, this does not state any claim under the billing

18  rule as a matter of law and pursuant to Rule 9(b).

19  **F.    THE TAC FAILS TO STATE A CA-IFPA CLAIM BASED ON
20        WAIVER OF CO-PAYS AND DEDUCTIBLES.**

21  Lastly, Relators' claim under the CA-IFPA predicated on co-pay and

22

23  [7] Relators claim in their Opposition that "Defendants were charging non-Medi-Cal
   patients the usual, lower fee and charging Medi-Cal patients more than that usual
24  fee." Opp. at 20.  However, there is absolutely nothing in the TAC supporting this
   statement and no attempt to identifying a single patient claim or instance where
25  this occurred.

26  [8] Also immaterial, as a matter of law, are the amounts that Medicare and other
   payors are willing to *pay* in response to RIC's billed charges.  Again, Relators fail
27  to appreciate the difference and continue to (intentionally or unintentionally)
   conflate the two by arguing, for example: "RIC Defendants based their 'usual fee'
28  on approximately 200% of the Medicare reimbursement rate, even though the
   actual 'usual fee' *paid* for services by RIC is much lower than that rate." *See* Opp.
   at 20 (italics added).

371534.1

14

NELSON HARDIMAN LLP

11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

1   deductible waivers, which the Court dismissed pursuant to Rule 9(b) because it

2   failed to identify an improper waiver of a *commercial* plan patient's co-payment or

3   deductible, fails again for the very same reason.  In fact, Relators concede they

4   have nothing further to offer in support of this claim since their Opposition relies

5   on the very same allegations in the SAC that this Court found insufficient in the

6   first place.

7       In dismissing Relators' claim under the CA-IFPA, the Court ruled that

8   Relators co-pay and deductible waiver theory failed to satisfy Rule 9(b) because

9   they did not "identify either specific instances or a time range in which RIC

10  improperly waived a commercial plan patient's co-payment or deductible, as

11  opposed to that of a Medicare patient."  7/25/17 Order at 23.  As Defendants

12  explained in their Motion, this failure was not cured by the TAC, which merely

13  added the new allegation that three commercial plan patient co-pays had been

14  waived, but again failed to allege crucial facts indicating that these particular

15  waivers were "improper" or constituted insurance fraud. *See* Motion at 23.

16  Relators' Opposition offers no counter-argument on this point.[9]

17      Relators' Opposition gives this Court no reason to rule any differently on

18  this theory than it did for the SAC, since Relators simply point to the same exact

19  allegations this Court already found insufficient in the SAC and with the hope for a

20  different result.   Specifically, the Opposition relies on the allegations that

21  "[a]pproximately one-third of RIC patients had commercial coverage"; that plan

22  contracts allegedly "require that the patient be charged and pay a deductible and/or

23  a co-payment before a benefit is payable under the plan;" that "[w]aivers of co-

24  payments and deductibles were regularly and commonly made for patients who

25  had commercial coverage"; and "[w]hen submitting claims to commercial carriers

26

27  _____

28  [9] Relators only response is to assert, without explanation, that "[t]he TAC details
    specific instances when RIC Defendants improperly waived co-payments for
    patients who had commercial plans."  Opp. at 22.

371534.1

DEFENDANTS' REPLY IN SUPPORT OF MOITION TO  DISMISS THIRD AMENDED COMPLAINT

for these patients, the RIC Defendants and Providers listed the co-payment amounts and actually or impliedly represented  that they were charging the required co-payments and deductibles, when they were not."  Opp. at 22; *compare* SAC ¶¶ 148-149 with TAC ¶¶ 178-179.  Yet none of these repurposed allegations, even if this Court were to re-consider them, advance Relators' theory because none demonstrate that RIC *improperly* waived any commercial plan patient's co-pay or deductible.  Consequently, the TAC, just like the SAC, fails because it is "bereft of certain essential facts required to satisfy Rule 9(b)."  7/25/17 Order at 23.

## G.   THESE SIX TAC CAUSES OF ACTION OR LEGAL THEORIES OF LIABILITY SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

If a complaint is subject to dismissal for failure to state a claim, "leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'"  *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)), *overruled on other ground by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990)).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), *cert. denied*, 516 U.S. 1051 (1996).

In this case, the TAC amply demonstrates that Relators have no additional facts that would cure the legal deficiencies in the six causes of action and legal theories of liability discussed above, making any further amendment futile.  Four opportunities to state valid claims are enough.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (district court may dismiss case without leave to amend due to "repeated failure to cure deficiencies by amendments previously allowed.")  Each of these causes of action and legal theories should therefore be dismissed, this time without leave to amend.  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (district court's discretion to deny leave to amend is particularly broad when plaintiff has already filed an amended

NELSON HARDIMAN LLP
11835 WEST OLYMPIC BOULEVARD, SUITE 900
LOS ANGELES, CALIFORNIA 90064

complaint).

## III.    CONCLUSION

For the foregoing reasons, Relators' Third Amended Complaint should be dismissed pursuant to Rules 12(b)(6) and 9(b) for failure to state a claim  and to allege fraud with particularity.

Dated:  October 6, 2017

Respectfully submitted,

NELSON HARDIMAN LLP


By: */s/ Mark Hardiman*
Mark Hardiman

Attorneys for Defendants

17

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO  DISMISS THIRD AMENDED COMPLAINT**