UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 1 of 14 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS [99]**

**I.
PROCEDURAL BACKGROUND**

This state and federal False Claims Act suit was originally filed in May 2013. [Doc. # 1.] The United States and California declined to intervene in July 2016. [Doc. ## 36–39.] On July 25, 2017, this Court dismissed, with leave to amend, several theories of liability the second amended complaint ("SAC") pursued. [Doc. # 97 ("July 25, 2017 Order").]

On August 15, 2017, Relators Bobbette A. Smith and Susan C. Rogers (collectively, "Relators") filed the operative Third Amended Complaint ("TAC"). [Doc. # 98.] Relators bring the action on behalf of the United States of America and the State of California against Defendants Tom S. Chang, M.D. ("Dr. Chang"), Tom S. Chang, M.D., Inc. ("Dr. Chang Inc."), Michael A. Samuel, M.D. ("Dr. Samuel"), Michael J. Davis, M.D. ("Dr. Davis" and, doctors collectively, "RIC Partners"), Brett Braun, Retina Institute of California Medical Group ("RIC" and, with RIC Partners, the "RIC Defendants"), California Eye and Ear Specialists ("CEES"), and San Gabriel Ambulatory Surgery Center LP, ("SGASC"). The TAC, like the pleading before it, asserts claims for violations of the following: (1) the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*; (2) the California False Claims Act ("CA-FCA"), Cal. Gov't Code § 12650 *et seq.*; and (3) the California Insurance Frauds Prevention Act ("CA-IFPA"), Cal. Ins. Code § 1871.7.

Before the Court is Defendants' motion to dismiss the TAC ("MTD"). [Doc. # 99.] For the following reasons, the Court **GRANTS in part** and **DENIES in part** the MTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 2 of 14 |

## II.
## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824, n.3 (9th Cir. 2011) (citing Fed. R. Evid. 201(b)). "A court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

In support of the MTD, Defendants ask this Court to take judicial notice of four Medicare contractor local coverage determinations ("LCD"), which are proper subjects of judicial notice. *See United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1002 n.36 (C.D. Cal. 2015) (taking judicial notice of LCDs). The Court **GRANTS** the RJN with respect to Exhibits A and B but **DENIES as moot** the remaining exhibits because the Court did not consider them in resolving this motion.

## III.
## FACTUAL BACKGROUND[1]

Defendants—Dr. Chang, Dr. Samuel, and Dr. Davis, individual physicians; Dr. Chang, Inc., a management company owned by Dr. Chang; RIC, a California ophthalmology group specializing in retina diseases; the RIC Partners, owners and operators of RIC; Braun, the former CEO of RIC; CEES, an ophthalmology practice owned by Dr. Chang; and SG-ASC, an ambulatory surgery center in which the RIC Partners have investment interests—allegedly engaged in a number of unlawful and fraudulent schemes, many of which defrauded government-funded healthcare programs, including the federal Medicare and Medicaid Programs and California's "Medi-Cal" Program. TAC at 2, ¶¶ 17–24. Relators—RIC's former Chief Operating Officer and Billing Department Manager—set forth eight theories of liability under the FCA, two theories of liability under the CA-FCA, and one under the CA-IFPA. *Id.* at ¶¶ 13–14.

Because the Court is familiar with the extensive facts in this case, and because the TAC does not depart substantially from the SAC, the Court incorporates by this reference the

---

[1] The Court accepts all material facts alleged in the TAC as true solely for the purpose of deciding the MTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 3 of 14 |

presentation of facts from the July 25, 2017 Order and presents below only those allegations that are distinct from those in the SAC or that are particularly relevant to this motion.

### A.    Payment for Physician Referrals

The TAC provides further details on the inducements for patient referrals as explained below.

In addition to waiving copayments and deductibles for Medicare patients to promote patients' repeat business and to receive referrals, RIC induced referrals from practitioners ("Referring Practitioners") by providing remuneration in the form of free meals, drinks, tickets to events, and other gifts.[2]  TAC at ¶ 74.  RIC's CEO, Braun, had the primary duty to market RIC to physicians for their patient referrals, and he provided each RIC physician a target list of doctors from whom they were expected to solicit referrals.  *Id.* at ¶¶ 75–76.  RIC physicians were also expected to schedule at least one lunch and one dinner per month (on the RIC Defendants' dime) to increase referrals, and a total of 56 lunches and dinners occurred in September 2012 alone.  *Id.* at ¶ 76.  Additionally, RIC provided remuneration to Referring Practitioners in the form of free trainings and admission to continuing education programs, which included free meals and prizes, paid for by RIC.  *Id.* at ¶¶ 78–80.

The claims submitted for payment to Medicare were accompanied "by an express or implied certification that the transaction was not in violation of federal or state statutes, regulations, or program rules."  *Id.* at ¶ 82.  Those certifications were false because, according to Relators, "each claim for payment was tainted by the kickbacks detailed" above and incorporated herein.  *Id.*

### B.    RIC's Undisclosed Investment Interest in SG-ASC

As explained in the SAC, RIC has investment interests in the ambulatory surgery center SG-ASC, the RIC Partners collectively own 50% of the center, and neither RIC nor CEES physicians advise their patients of these investment interests.  *Id.* at ¶ 101, 105–06.

The RIC Partners routinely refer RIC patients who require surgery to SG-ASC, and other RIC physicians and CEES are required to refer patients to the center as a condition of their continuing employment.  *Id.* at ¶ 101–02.  Between 2010 and 2012, RIC and CEES referred

---

[2] The TAC includes a list of 14 entries in the CEO's expense report reflecting alleged kickback payments specifying the date, amount, description, and initials of the Referring Practitioners.  *See* TAC at ¶ 77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 4 of 14 |

patients to SG-ASC.[3]  *Id.* at ¶ 102.  As a result of these referrals, Defendants submitted several claims for reimbursement to Medicare, Medicaid, and other government healthcare programs in connection with SG-ASC services.  *Id.* at ¶ 107.  Financial records show that over 25% of the patients referred to SG-ASC were Medicare patients.  *Id.*

Relators allege that these claims were false and fraudulent because the failure to disclose investment interests results in remuneration, and, as described above, the claims certification is fraudulent.  *Id.* at ¶ 108.

## C.     Unnecessary ICG Tests

The TAC's allegations regarding the allegedly unnecessary indocyanine green angiography ("ICG") test largely track the SAC's allegations, except for, as relevant here, the following discussion about the test's medical necessity.

Relators allege the ICG tests are medically unnecessary because RIC uses a different diagnostic test when actually treating patients, and that an "[e]xpert review" of 1397 angiograms the RIC Defendants performed showed the same.  *See id.* at ¶¶ 135, 139 (chart of samples of expert's analysis).[4]  That expert analysis determined that the ICG tests were medically unnecessary for 98% of the Medicare claims submitted.  *Id.* at ¶ 141.  Review of patient charts shows "that there is no evidence that the RIC Defendants pay any attention at all to the ICG images or that they use the ICG tests for any purpose other than to generate fraudulent revenue by submitting false claims."  *Id.*  Relators allege further details that, according to them, "confirm" the RIC Defendants' motives behind use of the ICG tests.  *See id.* at ¶¶ 142–43, 146.

Relators also contend that the RIC Defendants induce other RIC physicians to use the ICG tests to generate income by conditioning partnership and other employment advancement, including future compensation such as bonuses, on use of the ICG tests.  *See id.* at ¶¶ 144–45.

One retired local coverage determination ("LCD"), issued by the Medicare administrative contractor for California, states that ICG "is effective in the diagnosis and treatment of" some AMD associated symptoms and "useful in the evaluation" of other eye impairments.  Ex. A to

---

[3] Relators possess a list of patients referred by Defendants to SG-ASC spanning these dates.  TAC at ¶ 102.

[4] The Department of Justice ("DOJ") independently evaluated the RIC Defendants' use of ICGs, and the agency's determinations were similar:  RIC Defendants did not use the ICG images to make diagnoses or treatment decisions, and they scheduled patients' return visits in short intervals regardless of what the ICG images showed.  TAC at ¶ 136.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 5 of 14 |

RJN at 3 [Doc. # 100 at 12].[5]  The same LCD indicates that ICG tests "may be a valuable diagnostic" tool, but that the tests may also be considered medically unnecessary. *See id.* at 4 [Doc. # 100 at 13].

### D.    Medicare Physicians Quality Reporting System

The TAC maintains Relators' allegations that RIC submitted false data under the Medicare Physicians Quality Reporting System ("PQRS"). The TAC explains that the data submitted for 2011, which RIC represented reflected data for the full 12-month period, actually only reflected information for the four months of September, October, November, and December 2011. TAC at ¶¶ 163–64. Additionally, RIC represented that 80% of its Medicare cases were entered when they in fact were not. *Id.* at ¶¶ 164–65. As a result, RIC received over $60,000 in incentive payments, predicated on the supposedly complete information submitted, despite the fact that RIC did not comply with the PQRS requirements. *Id.* at ¶ 165. RIC refused to refund the overpayment despite Relator Smith's advice. *Id.* at ¶¶ 166–67.

As with the SAC, the TAC also alleges that some of the information reported for 2012 "was for activities that had not actually occurred." *Id.* at ¶ 163.

### E.    Alleged Discriminatory Billing

Relators pursue in the TAC an additional theory from that presented in the SAC with respect to Defendants' alleged violations of California's discriminatory billing rule. In the SAC, Relators alleged the RIC Defendants charged uninsured patients fees that were lower than the rate Medi-Cal was billed for the same services, a theory of liability which this Court dismissed. SAC at ¶ 141; July 25, 2017 Order at 21. In this pleading iteration, Relators allege that the RIC Defendants falsely inflated (by about 200%) the "usual fee" charged on its reimbursement claims to obtain the maximum Medi-Cal reimbursement rate. TAC at ¶¶ 171–72. For example, Medi-Cal reimburses up to $364.11 (whereas Medicare reimburses $124.28) for one service code, so RIC falsely lists its usual fee as $370, instead of $250, to receive more money in reimbursement. *Id.* at ¶ 172. Moreover, the usual fee that RIC charges to Medicare patients is inherently inflated because of RIC's routine co-pay waiver. *Id.*

---

[5] Although the referenced LCD is retired, the guidelines may still be used to determine medical necessity. *See* Ex. B to RJN [Doc. # 100 at 24] ("LCDs are retired due to lack of evidence of current need(s) for the education and/or edits in some cases because the material is addressed by a National Coverage Determination (NCD) a coverage provision in a CMS interpretive manual, another LCD or an article. Retirement does not mean that medical necessity has changed or that the LCD no longer reflects appropriate criteria. The guidance in the retired LCD may be helpful in assessing medical necessity.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 6 of 14 |

Additionally, while RIC typically charges Medicare patients, HMO and commercially insured patients, and cash paying patients *less* than the Medicare or other relevant reimbursement rate, RIC "in certain instances" charges Medi-Cal patients more than its purported "usual fee" (*i.e.*, more than 200% of the Medicare reimbursement rate) to justify Medi-Cal charges. *Id.*

From 2006 through 2012, RIC Defendants allegedly received payments on false claims in the sum of $1,233,356.78. *Id.* at ¶ 174.

**F.      Waiver of Deductibles and Co-Payments for Commercial Insurance Patients**

Relators maintain their California Insurance Fraud Prevention Act claim based on the allegedly unlawful waiver of co-payments for patients with commercial insurance coverage, regardless of the patients' financial standing. *See id.* at ¶¶ 179–80. The TAC includes three representative waivers in 2011 and 2012, including the patient, the doctor, the amount of waived copayments, and the timeframe of such waivers. *See id.* at ¶ 179.

## IV.
## LEGAL STANDARD

The Court set forth the applicable legal standard for motions to dismiss in the July 25, 2017 Order and need not repeat it here. [Doc. # 97 at 8–9.]

## V.
## DISCUSSION

**A.      Federal FCA Claims**

Defendants first argue that the TAC fails to state a claim under the FCA based on kickbacks to referring physicians, the alleged failure to disclose an ownership interest in SG-ASC, allegedly medically unnecessary ICG tests, and false reporting of PQRS data. The Court addresses these issues *seriatim*.

**1.      Kickbacks to Referring Physicians**

In the July 25, 2017 Order, the Court explained at length the language and interpretation of the Anti-Kickback Statute's ("AKS") use of "remuneration." *See* July 25, 2017 Order at 10, 12. Rather than repeat that discussion, the Court incorporates it herein by this reference.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|

| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 7 of 14 |
|---|---|---|---|

In its earlier Order, the Court dismissed the SAC's allegations about Defendants' remuneration-for-referrals inducement scheme because the Relators did not sufficiently plead the referring physicians' receipt of payment or other remuneration in exchange for referrals. *See id.* at 12. The TAC cures this deficiency.

Defendants argue that the TAC's allegations of various categories of remuneration—free meals, drinks, event tickets, and other gifts—are insufficient to satisfy Rule 9(b)'s pleading requirements. Specifically, Defendants assert that the Relators fail to plausibly establish that such remuneration was illegally intended to induce, as opposed to encourage, referrals. *See Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995) ("mere encouragement" does not violate anti-remuneration provision but the "knowing[] and willful[] offer[] or pa[yment of] remuneration to induce [defined as to exercise influence over the reason of judgment of another in an effort to cause the referral of business] referrals" does violate such AKS provision). Additionally, Defendants contend that the TAC's representative chart of alleged remuneration does not show that the RIC Defendants actually induced referrals.

Both arguments fail. The TAC repeatedly states that the meals, events, and other gifts were intended to, and did in fact, induce referrals. *See* TAC at ¶¶ 74 ("[T]he RIC Defendants *induced referrals* from the Referring Practitioners . . . by providing remuneration . . . ." (emphasis added)), 75–76 (2,568 of 3,937 new patients in 2012 came from referring doctors, and 56 lunches and dinners to induce referrals occurred in September 2012 alone), 77 ("RIC . . . and the RIC Defendants routinely provided remuneration . . . *with the purpose of inducing referrals* . . . ." (emphasis added)), 78 ("The RIC Defendants also regularly provided remuneration to Referring Practitioners . . . all of which *was designed to and did, in fact, induce referrals*." (emphasis added)). The Relators also substantiate these allegations with specific facts that make plausible the intentional inducement allegations. *E.g.*, *id.* at ¶ 76 (detailing Braun's marketing effort and how he encouraged physicians to target referrals), 79 (alleging that all physicians were subject to mandatory weekly lunch and dinner, paid for by RIC Defendants, to induce more referrals). These allegations, which must be taken as true on this motion to dismiss, sufficiently allege a plausible scheme by the RIC Defendants to induce (successfully) Referring Physicians to refer patients that later formed the basis for false or fraudulent Medicare reimbursement claims.[6]

---

[6] Briefly in the MTD, Defendants argue that the TAC falls short of satisfying Rule 9(b)'s "who, what, when and how" requirements. MTD at 11. Insofar as Defendants intended to pursue dismissal on this ground, that argument fails. "[A] relator need not 'identify representative examples of false claims to support every allegation,'" so long as he or she "allege[s] *particular details* of a scheme to submit false claims *paired with reliable indicia* that lead to a strong inference that *the claims were actually submitted*." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (emphasis added) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 8 of 14 |

Defendants point to *United States ex rel. Parikh v. Citizens Medical Center*, 977 F. Supp. 2d 654 (S.D. Tex. 2013), in support of their argument. *Parikh* is both out of Circuit and therefore non-binding on this Court, as well as factually distinguishable. There, the relators failed to plead "either specific examples of illegal referrals or reliable indicia creating an inference that such referrals occurred." *Id.* at 675. As explained above, the TAC sufficiently alleges AKS violations that form the basis for an FCA claim. The Court therefore **DENIES** the MTD with respect to the inducement-related claim with one exception, outlined below.

Insofar as the TAC intended to maintain the allegation that the RIC Defendants routinely waived co-payments to unlawfully induce referrals from other eye care physicians, this theory of liability fails for the reasons explained in the July 25, 2017 Order. *See* TAC at ¶ 74; July 25, 2017 Order at 12 ("[T]he remuneration—waiver or offer of waiver of co-pays—was offered to the *patients*, not to the referring physicians."). The Court therefore **GRANTS** the MTD as to this aspect of the FCA claim.

### 2. Disclosure of Ownership Interest in SG-ASC

The law that underlies Relators' allegations of unlawful referrals to SG-ASC without disclosure of the RIC Defendants' ownership interest in the surgery center is familiar to this Court and the Court's earlier discussion of the Stark Law and AKS are incorporated herein by this reference. *See* July 25, 2017 Order at 13–14.

In the July 25, 2017 Order, the Court dismissed the SAC's cause of action on this point because Relators failed to allege that the RIC Defendants offered or paid RIC and CEES referring physicians any remuneration in exchange for referrals. *Id.* at 15. Defendants move to dismiss the amended allegations on two grounds.

First, Defendants contend that the TAC fails to allege, with the requisite specificity, the actual referrals and the subsequent submission of Medicare claims for services provided. Not so. *See* TAC at ¶¶ 102 (RIC Partners and other physicians routinely referred RIC patients to SG-ASC, and Relators have a list of these referrals between 2010 and 2012), 107 (RIC Defendants and CEES submitted "a number" of claims for reimbursement in connection with the referred patients and SG-ASC services), *id.* (over 25% of referred patients were Medicare patients, whose claims were subsequently submitted for reimbursement). These allegations sufficiently allege that the RIC Defendants referred patients to SG-ASC and that those referrals resulted in fraudulent claims. The Court thus **DENIES** the MTD on this aspect of the federal claim.

---

2010)). Here, Relators in fact did identify representative acts of remuneration. *See, e.g.*, TAC at ¶ 77 (chart detailing 14 different expenditures in 2012 by date, amount of money, type of gift, and referring practitioner).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-3772-DMG (MRWx) | Date | June 1, 2018 |
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 9 of 14 |

Second, Defendants argue that the Relators' new allegation that the RIC Defendants conditioned RIC physicians' future employment on SG-ASC referrals is deficient. This argument holds water. As Defendants point out, Relators fail to specify the who, what, when, and how in connection with the alleged condition. *See United States ex rel. Pogue v. American Healthcorp, Inc.*, 977 F. Supp. 1329, 1332–33 (M.D. Tenn. 1977) (complaint detailed nature of physician's contracts, including claims that "physicians' compensation under these contracts was based . . . upon the ability of the physicians to refer large number of diabetes patients to the center" and commissions were paid "based on the number of diabetes patients admitted to the medical center").

Here, the TAC alleges only the single, conclusory statement that continued employment was conditioned upon referrals, and there are no facts presented in either the TAC or the Opposition that substantiate this allegation. The Court thus **GRANTS** the MTD as to this aspect of the federal FCA claim.

### 3. Medically Unnecessary ICG Testing

Medicare pays only for medical tests that are both reasonable and necessary for the diagnosis or treatment of a patient. *See* 42 U.S.C. § 1395y(a)(1)(A). Medicare claims for medically unnecessary services may be actionable under the FCA. *See Frazier ex rel. U.S. v. Iasis Healthcare Corp.*, 392 F. App'x 535, 537 (9th Cir. 2010); *Maa v. Ostroff*, No. 12-cv-00200-JCS, 2013 WL 1703377, at *20 (N.D. Cal. April 19, 2013). When the Court dismissed the SAC in connection with the ICG testing aspect of the FCA claim, it did so because Relators failed to allege why the ICG tests are medically unnecessary, versus their being more expensive and outside the normal standard of care. July 25, 2017 Order at 17–18. Despite Defendants' arguments to the contrary, the TAC cures this deficiency.

Defendants argue that Relators' claim fails because relevant LCDs indicate that ICGs may be necessary to treat AMD, the condition mentioned in the TAC. The Court acknowledges that one retired LCD notes ICG's effectiveness in some instances, but this fact is irrelevant to the Relators' allegations. The Relators do not appear to allege that ICG tests will never be medically necessary, but rather, that Defendants' particular use of ICG tests is, by and large, medically unnecessary and undertaken solely for its reimbursement value. The LCD thus does not compel dismissal.

Additionally, Defendants contend that the TAC, like the SAC, predicates medical necessity solely on the fact that ICG testing does not conform to the applicable standard of care. This is patently false. The TAC explains, in several paragraphs, that the challenged ICG tests

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 10 of 14 |

were medically unnecessary because the RIC Defendants did not use the tests to make treatment decisions. *E.g.*, TAC at ¶ 135. This is one established reason for the test's lack of necessity. *See* 42 U.S.C. § 1395y(a)(1)(A) (services must be used for treatment); *KVG Easy Leasing Corp. v. Sebelius*, No. 09-56393, 2011 WL 490990, at *1 (9th Cir. Feb. 14, 2011) (test results must be used in patient treatment). The Court thus **DENIES** the MTD insofar as Relators ground this aspect of the FCA claim in the allegedly medically unnecessary ICG tests and subsequent false or fraudulent claims for reimbursement.

To the extent Relators intend to maintain an FCA claim based on allegations that the ICG tests are medically worthless, the Relators' argument do not pass the 9(b) muster. The TAC fails to allege that Defendants' performance of the ICG tests were deficient. *See Mikes v. Straus*, 274 F.3d 687, 703 (2d Cir. 2001) (medically worthless service occurs when "the performance of the services is so deficient that for all practical purposes it is the equivalent of no performance at all"), *abrogated on other grounds*, *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016). A worthless services claim "is effectively derivative of an allegation that a claim is factually false because it seeks reimbursement for a service not provided." *Id.* Neither the TAC nor the Opposition explain how the ICG test's performance was deficient, as opposed to its being performed unnecessarily. Thus, the Court **GRANTS** the MTD in connection with the medically worthless aspect of the FCA claim.

### 4. PQRS Allegations

Defendants seek dismissal of Relators' theory of fraud in connection with the allegedly false submitted PQRS data, arguing that the TAC fails to explain how Defendants made false representations given the fact that "providers actually had the option to submit eligible data within 'reporting periods' of . . . six months." MTD at 21. This argument fails. Defendants accurately posit that guidance from the Centers for Medicare and Medicaid Services ("CMS") permit some six-month reporting periods for 2011 data, but this fact does not defeat Relators' claim. *See* MTD at 21–22 & nn.14–17 (citing and quoting the CMS 2011 Implementation Guide); *see also* 75 Fed. Reg. 4040-01, 40169 (July 13, 2010) (proposing six-month reporting period for some data reporting for 2011). Relators explicitly allege that Defendants represented, falsely, that only four months' worth of data reflected data for a 12-month reporting period. *See* TAC at ¶ 164. Thus, it is irrelevant that the statute permits a six-month reporting period in some circumstances.

Defendants also argue that the TAC fails to satisfy Rule 9(b)'s pleading requirements because Relators did not explain specifics about the types of data that was reported, such as "claims-based" reporting or "EHR-based" reporting. *See* MTD at 21. Although Rule 9(b)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 11 of 14 |

carries a heightened pleading standard, such standard "is not an invitation to disregard[] Rule 8's requirement of simplicity, directness, and clarity," and "among [the Rule's] purposes [is] the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (1996). Moreover, the particularity requirement is meant to "ensure[] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong" and to "prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs." *Semegen v. Wediner*, 780 F.2d 727, 731 (9th Cir. 1985). Here, the TAC clearly and directly puts Defendants on notice of Relators' claim for fraud with regard to the falsely submitted PQRS data from the 12-month reporting period of January to December 2011, which resulted in the overpayment of $60,000 in incentive pay.

The Court therefore **DENIES** the MTD as to Relators' allegations of fraudulent PQRS reporting for 2011. The Court also **DENIES** the MTD with respect to the cause of action based on the RIC Defendants' unlawful retention of $60,000 to which RIC was not entitled. Because the allegations related to the incomplete reporting period are sufficient to state an FCA certification claim, the cause of action related to the unlawful retention of unentitled funds also states a claim.

As for Relators' allegations about the 2012 PQRS data submission, the Court **GRANTS** the MTD for the same reason it dismissed those allegations in the July 25, 2017 Order. *See* July 25, 2017 Order at 20 ("The only factual allegation related to the allegedly fraudulent 2012 submission is that 'certain of the information reported was for activities that had not actually occurred.'" (citing SAC at ¶ 135)); TAC at ¶ 163 ("For 2012, certain of the information reported was for activities that had not actually occurred.").

Finally, Defendants challenge the TAC's allegation that 80% of the Medicare cases were "entered" when they, in fact, were not. *See* TAC at ¶ 164. Because it is not clear what the 80% requirement is (if one exists), how it works, and how Defendants violated it, Relators fail to satisfy 9(b)'s specificity requirement. Furthermore, the Opposition fails to address this aspect of the MTD. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (collecting cases)). Accordingly, the Court **GRANTS** the MTD in connection with the 80% Medicare entry allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 12 of 14 |

### B.  CA-FCA Claims

Defendants move to dismiss the alleged discriminatory billing rule violation from the TAC's California False Claims Act cause of action.  *See* Cal. Code Regs., tit. 22, § 51480(a) ("No provider shall bill or submit a claim for reimbursement for the rendering of health care services to a Medi-Cal beneficiary in any amount greater or higher than the usual fee charged by the provider to the general public for the same service.").

Defendants again argue that Relators' allegations fail to establish a violation of the discriminatory billing rule because governing state law permits health care providers to charge lower rates to uninsured patients.  *See* Cal. Bus. & Prof. Code § 657(c).  This argument misses the mark.  Under California law, it is impermissible to charge Medi-Cal beneficiaries higher prices than the general public, and, as explained above, the TAC alleges that Defendants charge Medi-Cal patients more for the same services than they charge Medicare, privately insured, and cash-paying patients.  Thus, Relators plead a valid violation of the discriminatory billing rule.

Defendants also argue that Relators fail to plead this claim with sufficient particularity.  Relators' allegations include an explanation of the overall fraudulent scheme as well as a representative false claim.  *See* TAC at ¶ 172.  The TAC also alleges that such false claims were actually submitted for payment to Medi-Cal, and that RIC Defendants received over $1 million in a six-year period because of those false claims.  *Id.* at ¶¶ 173–74.  These allegations satisfy Rule 9(b).  The Court therefore **DENIES** the MTD in connection with Relators' discriminatory billing rule allegations.

### C.  CA-IFPA Claim

The Court incorporates by this reference the July 25, 2017 Order's discussion of the CA-IFPA.  *See* July 25, 2017 Order at 22–23.  Defendants contend that the TAC's CA-IFPA allegations fail to state a claim because "Relators do not allege that such [co-pay] waivers were specifically barred by a state law equivalent to the AKS or by any other law regulating commercial health plan claims."  MTD at 25.  Such an allegation is not necessary for Relators to state a claim under the CA-IFPA; the TAC's allegations that RIC Defendants routinely waived co-payments and deductibles for commercially insured patients, even though those insurance carriers contractually required such payments, and then certified on the claims submitted to the relevant insurance companies that they charged such co-payments and deductibles, are sufficient.  *See* Cal. Penal Code § 550.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-3772-DMG (MRWx)** | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 13 of 14 |

The California Attorney General opinion Defendants cite is both distinguishable and inapposite. *See* 64 Ops. Cal. Atty. Gen. 782, 1981 WL 126814 (due to ambiguity of "usual fee" as used in dental insurance plan provision, waiver of co-payment under plan does not constitute fraud or misrepresentation). As the District Court explained in *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc*., Relators' allegations do not involve interpretation of an insurance plan's "usual fee" language, but rather "instance[s] in which affirmative misrepresentations were alleged to have been made during the course of claims submissions." 121 F. Supp. 3d 950, 971 (C.D. Cal. 2015). As in *Almont*, this Court concludes that "reporting charges to an insurer that allegedly fail to account for co-pay waivers but are meant to reflect the fees actually charged to the patient . . . . amount[s] to affirmative misrepresentations." *Id.* at 972–93; *see also Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, 703 F. App'x 126, 133 n.14 (3d Cir. 2017) (whether conduct alleged is fraudulent depends on contractual obligations (collecting cases)).

Defendants also argue that the allegations do not satisfy 9(b)'s pleading requirements because Relators do not specify a myriad of allegedly necessary details. This argument also fails. While the TAC does not "specifically describe the specific healthcare plan contract provisions governing RIC's alleged contractual duty to collect copayments," it does allege that the relevant contracts "require that the patient be charged and pay a deductible and/or a co-payment before a benefit is payable under the plan," and that RIC Defendants routinely waived these payments but listed them as being charged when submitting claims to commercial carriers for payment. MTD at 27–28; TAC at ¶¶ 178–79. Indeed, Relators plead representative false claims. At this stage of the litigation, even in light of Rule 9(b), these allegations are sufficient. The California case Defendants cite in support of their defense does not help them because it involved a different procedural posture (post-trial appeal), a different law (Cal. Code Regs. Tit. 28, § 1300.71), and an altogether different claim (how determine reasonable value of poststabilization emergency care provided by hospital in absence of written contract). *See Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*, 226 Cal. App. 4th 1260 (2014).

Accordingly, the Court **DENIES** the MTD as to the CA-IFPA claim.

**D.     Leave to Amend**

With respect to those causes of action, or aspects thereof, on which the Court grants the MTD, the Court must determine whether leave to amend is appropriate. As explained throughout this Order, Relators' Opposition does not address the deficiencies identified herein, or explain how amendment would cure them. Accordingly, leave to amend is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-3772-DMG (MRWx) | Date | June 1, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. Tom S. Chang, et al.* | Page | 14 of 14 |

## VI.
## CONCLUSION

In light of the foregoing, the Court **GRANTS in part, without leave to amend,** and **DENIES in part** the MTD. Defendants shall file their Answer within 21 days from the date of this Order.

**IT IS SO ORDERED.**