Kolin C. Tang (SBN 279834)
Shepherd, Finkelman, Miller & Shah, LLP
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Phone: (323) 510-4060
Fax: (866) 300-7367
Email: ktang@sfmslaw.com

Attorneys for Plaintiffs-Relators

*Additional counsel listed on last page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORNIA, *ex rel* BOBBETTE A. SMITH and SUSAN C. ROGERS,<br><br>Plaintiffs,<br><br>v.<br><br>TOM S. CHANG, M.D., TOM S. CHANG, M.D., INC., MICHAEL A. SAMUEL, M.D., MICHAEL J. DAVIS, M.D., RETINA INSTITUTE OF CALIFORNIA MEDICAL GROUP, CALIFORNIA EYE AND EAR SPECIALISTS, BRETT BRAUN and SAN GABRIEL AMBULATORY SURGERY CENTER LP,<br><br>Defendants. | CASE NO.:  2:13-cv-3772-DMG (MRWx)<br><br>**PLAINTIFFS-RELATORS' NOTICE OF MOTION AND MOTION FOR ISSUE, EVIDENTIARY AND MONETARY SANCTIONS**<br><br>Date:   May 31, 2019<br>Time:  9:30 a.m.<br>Judge: Hon. Dolly M. Gee<br>Ctrm:  8C, 8th Floor<br><br>Discovery Cutoff:  May 31, 2019<br>Pretrial Conference: September 3, 2019<br>Trial: October 1, 2019 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** on May 31, 2019 at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 550, of the above-entitled Court located at 350 West First Street, Courtroom 8C, 8th Floor, Los Angeles, CA, 90012, Plaintiffs-Relators, Bobbette A. Smith and Susan C. Rogers, by their undersigned attorneys, hereby do move the Court, pursuant to Federal Rule of Civil Procedure 37, Rule 26, the Court's inherent authority, and Local Rule 37 for an order granting issue, evidentiary and monetary sanctions against Defendants, Tom S. Chang, M.D.; Tom S. Chang, M.D., Inc.; Michael A. Samuel, M.D.; Michael J. Davis, M.D.; Brett Braun; Retina Institute of California Medical Group; California Eye and Ear Specialists; and San Gabriel Ambulatory Surgery Center LP (collectively, "Defendants") for their egregious failures to comply with their federal obligations and with court orders regarding discovery in this case.

This Motion is based upon the memorandum of points and authorities, evidence, declarations and exhibits submitted in support of this Motion, such additional evidence and argument as may be presented at the hearing on this motion, all of the pleadings, files and records in this proceeding, and such other evidence as may later be submitted.

This Motion is made following the conference of counsel pursuant to Local Rule 37-1, which took place on April 25, 2019.

Dated: May 3, 2019                    Respectfully submitted,

                                      /s/ Kolin C. Tang
                                      Kolin C. Tang
                                      Shepherd Finkelman Miller & Shah, LLP
                                      1401 Dove Street, Suite 540
                                      Newport Beach, CA 92660
                                      Telephone: (323) 510-4060
                                      Facsimile: (866) 300-7367
                                      Email:  ktang@sfmslaw.com

James E. Miller
Laurie Rubinow
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email:  jmiller@sfmslaw.com
              lrubinow@sfmslaw.com

Monique Olivier
Olivier Schreiber & Chao, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone:  415.484.0980
Email: monique@osclegal.com

Chiharu G. Sekino
Jaclyn Reinhart
Shepherd, Finkelman, Miller & Shah, LLP
1230 Columbia Street, Suite 1140
San Diego, California 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: csekino@sfmslaw.com
              jreinhart@sfmslaw.com

*Attorneys for Plaintiffs-Relators*

Kolin C. Tang (SBN 279834)
Shepherd, Finkelman, Miller & Shah, LLP
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Phone: (323) 510-4060
Fax: (866) 300-7367
Email: ktang@sfmslaw.com

Attorneys for Plaintiffs-Relators

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORNIA, *ex rel* BOBBETTE A. SMITH and SUSAN C. ROGERS,<br><br>Plaintiffs,<br><br>v.<br><br>TOM S. CHANG, M.D., TOM S. CHANG, M.D., INC., MICHAEL A. SAMUEL, M.D., MICHAEL J. DAVIS, M.D., RETINA INSTITUTE OF CALIFORNIA MEDICAL GROUP, CALIFORNIA EYE AND EAR SPECIALISTS, BRETT BRAUN and SAN GABRIEL AMBULATORY SURGERY CENTER LP,<br><br>Defendants. | CASE NO.:  2:13-cv-3772-DMG (MRWx)<br><br>**PLAINTIFFS-RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ISSUE, EVIDENTIARY AND MONETARY SANCTIONS**<br><br>Date:   May 31, 2019<br>Time:  9:30 a.m.<br>Judge: Hon. Dolly M. Gee<br>Ctrm:  8C, 8th Floor<br><br>Discovery Cutoff:  May 31, 2019<br>Pretrial Conference: September 3, 2019<br>Trial: October 1, 2019 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................1

    A.   Relators Initiate this Action and Defendants File Repeated Motions to Dismiss. ..................................................................................................1

    B.   Defendants Change Counsel Multiple Times. .......................................2

    C.   Defendants Repeatedly Stonewall Plaintiffs' Discovery Efforts..........2

    D.   The Court Orders Defendants' Production and Defendants Fail to Comply. ..................................................................................................4

    E.   Plaintiffs Serve Expert Reports Based Upon Available Data.............10

III. ARGUMENT ...............................................................................................11

    A.   The Court Is Authorized to Impose a Wide Range of Sanctions........11

    B.   Issue and Evidentiary Sanctions Are Necessary to Cure Defendants' Failure to Comply with the Court's Order. ........................................13

        1.   Sanctions Related to Defendants' Failure to Produce Billing and Medical Records. ...............................................................15

        2.   Sanctions Related to Defendants' Failure to Produce Expense Documentation...........................................................................19

        3.   Sanctions Related to Defendants' Failure to Produce SG-ASC and RICX Records. ...................................................................20

        4.   Sanctions Related to Defendants' Failure to Produce Records Regarding PQRS......................................................................20

        5.   Defendants Failed to Produce Required Emails and Other ESI for Critical Custodians. ..........................................................21

    C.   Additional Remedies Are Necessary and Warranted. ........................21

        1.   The Court Should Strike Defendants' Objections to RFP No. 2 and Order the Production of Documents Withheld as Privileged. ..................................................................................................21

        2.   This Court Should Strike Certain of Defendants' Affirmative Defenses...................................................................................22

        3.   This Court Should Make a Finding of Civil Contempt. ...........23

    D.   Monetary Sanctions Also Are Warranted for Defendants' Abuse of the Discovery Process. .........................................................................23

IV.  CONCLUSION.............................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases**

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) .................................................................25

*Bernstein v. Virgin Am., Inc.*,
  No. 15-CV-02277-JST, 2018 WL 6199679 (N.D. Cal. Nov. 28, 2018) ........12, 25

*Burlington N. & Santa Fe Ry. v. United States Dist. Court*,
  408 F.3d 1142 (9th Cir. 2005) .................................................................21

*Campbell Indus. v. M/V Gemini*,
  619 F.2d 24 (9th Cir. 1980) ....................................................................13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)................................................................................13

*Compaq Computer Corp. v. Ergonome, Inc.*,
  387 F.3d 403 (5th Cir. 2004) ..................................................................14

*Cunningham v. Hamilton County*,
  527 U.S. 198 (1999)..............................................................................25

*Cuviello v. Feld Entm't Inc.*,
  No. 5:13-CV-03135-LHK, 2015 WL 877688 (N.D. Cal. Feb. 27, 2015) .............1

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) ..................................................................14

*G-K Props v. Redev. Agency of the City of San Jose*,
  577 F.2d 645 (9th Cir. 1978) ..................................................................12

*Guifu Li v. A Perfect Day Franchise, Inc.*,
  281 F.R.D. 373 (N.D. Cal. 2012)..............................................................12

*Haar v. City of Mt. View*,
  2011 U.S. Dist. LEXIS 102790 (N.D. Cal. Sept. 12, 2011)..............................23

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) ....................................................................23

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)..............................................................................14

*Lanier v. San Joaquin Valley Officials Ass'n*,
  No. 1:14-CV-01938-EPG, 2016 WL 7178706 (E.D. Cal. Dec. 9, 2016).............14

*Lew v. Kona Hosp.*,
  754 F.2d 1420 (9th Cir. 1985) .................................................................12

*Liew v. Breen*,
  640 F.2d 1046 (9th Cir. 1981) .................................................................25

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962)................................................................13

*LM Ins. Corp. v. ACEO, Inc.*,
  276 F.R.D. 592 (N.D. Ill. 2011)...........................................25

*Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*,
  50 F.3d 730 (9th Cir. 1995)..................................................12

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
  427 U.S. 639 (1976)........................................................11, 12

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir.2001), *cert. denied sub nom.*, .........................24

*McLachlan v. Simon*,
  536 U.S. 941 (2002)..............................................................24

*Nike, Inc. v. Wolverine World Wide, Inc.*,
  43 F.3d 644 (Fed. Cir. 1994).................................................14

*Reno Air Racing Ass'n v. McCord*,
  452 F.3d 1126 (9th Cir. 2006)..............................................22

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995).................................................25

*Unigard Security Ins. Co. v. Lakewood Eng. Mfg. Corp.*,
  982 F.2d 363 (9th Cir.1992)..................................................24

*Valley Eng'rs Inc. v. Electric Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998)..............................................11

*Wanderer v. Johnston*,
  910 F.2d 652 (9th Cir.1990).................................................14

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983).................................................11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001)..............................................12

**Statutes**

28 U.S.C. § 1927..............................................................12, 24
31 U.S.C. § 3729.................................................................8

**Rules**

Fed. R. Civ. P. 16..............................................................24
Fed. R. Civ. P. 26........................................................*passim*
Fed. R. Civ. P. 37........................................................*passim*

# I.     INTRODUCTION

*"A basic rule of our legal system is that when courts issue orders, parties follow.  This case raises the question whether this rule applies to all parties, or only some. The answer should be obvious—no party is above the orders of the court." Cuviello v. Feld Entm't Inc*., No. 5:13-CV-03135-LHK, 2015 WL 877688, at *1 (N.D. Cal. Feb. 27, 2015).  Pursuant to the direction of the Honorable Michael R. Wilner, United States Magistrate Judge, Plaintiffs-Relators, Susan C. Rogers and Bobbette A. Smith ("Plaintiffs" or "Plaintiffs-Relators"), respectfully submit this Motion for Issue, Evidentiary and Monetary Sanctions in light of the abject failure by Defendants, Tom S. Chang, M.D., Tom S. Chang, M.D., Inc., Michael A. Samuel, M.D., Michael J. Davis, M.D., Retina Institute of California Medical Group, California Eye And Ear Specialists, Brett Braun and San Gabriel Ambulatory Surgery Center LP, to comply with the requirements of Judge Wilner's Order directing Defendants to comply with their discovery obligations by April 1, 2019.[1]  For the reasons explained below, Plaintiffs respectfully submit that the Court should enter the accompanying proposed Order granting them the evidentiary, issue and monetary sanctions sought.

# II.    FACTUAL AND PROCEDURAL BACKGROUND

## A.     Relators Initiate this Action and Defendants File Repeated Motions to Dismiss.

This False Claims Act action was originally filed under seal on May 28, 2013 (Dkt. No. 1) and Plaintiffs amended their Complaint under seal on September 30, 2013 (Dkt. No. 9).  After the Court unsealed this case on August 17, 2016 (Dkt. No. 44), and Plaintiffs served the Amended Complaint (Dkt. Nos. 66-75),

---

[1] At the hearing on March 27, 2019, in anticipation of the necessity of Plaintiffs being required to submit the instant motion, Judge Wilner indicated that a sanctions motion seeking, *inter alia*, evidentiary/issue sanctions should be submitted to this Court, which could then decide whether to address the motion or refer the motion to Judge Wilner for consideration and adjudication.

Defendants filed a Motion to Dismiss the Amended Complaint on December 19, 2016 (Dkt. No. 81) and Plaintiffs filed their Second Amended Complaint on January 17, 2017 (Dkt. No. 89).  Defendants filed a Motion to Dismiss the Second Amended Complaint on February 14, 2017 (Dkt. No. 91), as well as Plaintiffs' Third Amended Complaint on September 5, 2017 (Dkt Nos. 98-99).  Following the Court's decision on Defendants' Motion to Dismiss the Third Amended Complaint on June 1, 2018 (Dkt. No. 111), Defendants finally answered the operative complaint on June 22, 2018 (Dkt. No. 114).

### B.     Defendants Change Counsel Multiple Times.

Throughout the pendency of this action, Defendants have used four sets of counsel, including attorneys at Sheppard, Mullin, Richter & Hampton LLP, Nelson Hardiman, LLP, as well as their current counsel.  *See* Declaration of Laurie Rubinow ("Rubinow Decl.") ¶ 14.  These changes have obviously resulted in significant delays in connection with the prosecution of this action.  *Id.*

### C.     Defendants Repeatedly Stonewall Plaintiffs' Discovery Efforts.

Despite having years to comply with their obligations, Defendants have failed to produce documents that were identified in their own Initial Disclosures, as well as documents that are critical to the prosecution of this action, which were requested in Plaintiffs' First Set of Requests for Production ("RFP Set No. 1") and their Second Set of Request for Production of Documents ("RFP Set No. 2").

On May 10, 2017, Plaintiffs served RFP Set No. 1 on Defendants.  On July 5, 2017, Defendants provided written objections and responses, and indicated that they would not produce documents until a Protective Order was in place.   Dkt. 140-2.   On February 15, 2018, the Court approved the parties' Stipulated Protective Order.  Immediately thereafter, Plaintiffs' counsel emailed and attempted to reach Defendants' counsel by phone on February 20, 23, 27, and March 2, 2018, requesting that Defendants make a production in response to RFP

1  Set No. 1 now that the Stipulated Protective Order had been approved by the

2  Court.  *Id.*  Defendants finally responded and made their first production on

3  March 16, 2018 of one PDF containing documents bates-labeled RETINA00001-

4  RETINA011193.  *Id.*

5       After reviewing the first production, Plaintiffs sent a letter to Defendants on

6  July 20, 2018, identifying deficiencies in the production and requesting that

7  Defendants supplement their response.  Doc. 140-3.  On the same day, Plaintiffs

8  also served RFP Set No. 2 on Defendants, the responses to which were due on

9  August 20, 2018.  Dkt. 140-2.  On August 23, 2018, Plaintiffs sent an email to

10  Defendants requesting a meet and confer because Defendants had failed to: (1)

11  respond to Plaintiffs' July 20, 2018 letter with respect to the deficiencies in their

12  responses to RFP Set No. 1; and (2) respond to and produce any documents in

13  response to RFP Set No. 2.  *Id.*  On August 28, 2018, Defendants' counsel

14  responded, informing Plaintiffs that they "no longer represent RIC and the other

15  defendants as of July 16," even though counsel had jointly filed a Rule 26(f)

16  Report on July 27, 2018, eleven days after July 16.  *Id.*; Dkt. 116.  Subsequently,

17  on September 24, 2018, the court approved the substitution of Terrence Jones as

18  Defendants' counsel, who was later joined by Carla Ford as co-counsel for

19  Defendants on September 28, 2018.  Dkt. 134.  Since that time, the parties have

20  met and conferred on multiple occasions to resolve the outstanding discovery

21  issues.

22       On November 30, 2018, Plaintiffs served Defendants with a pre-filing notice

23  pursuant to Local Rule 37-1.  Dkt. 140-6.  In that letter, Plaintiffs informed

24  Defendants that they waived their right to object to RFP, Set No. 2 due to their

25  failure to respond. Id.   The parties met and conferred on December 7, 2018,  Dkt.

26  140-2  and, to memorialize Defendants' commitments to resolve the discovery

27  issues, on December 10, 2018, Defendants' counsel provided Plaintiffs with a

28  detailed outline of the production of documents they would make and the dates by

which they expected/anticipated doing so. *Id.* One week later, Defendants missed the first date by which they had agreed to make that production. *Id.* The parties met and conferred again on December 21, 2018, and Defendants made a limited production that day and on December 28, 2018, which productions Defendants then had to reproduce on December 31, 2018 to comply with the parties' ESI protocols. Dkt. 140-2. However, these productions were also deficient. *Id.*

On January 9, 2019 and January 15, 2019, Plaintiffs again served Defendants with a pre-filing notice pursuant to Local Rule 37-1. *Id.* In response to these notices, the parties met and conferred again on January 17, 2019, but were unable to resolve the discovery issues. *Id.* While Defendants repeatedly promised Plaintiffs that they would produce all responsive documents to RFP, Set 1 and 2 within a certain timeframe, they failed to do so.

Meanwhile, on February 5, 2019, the Court granted the parties' request to continue certain deadlines in the case. Dkt. 139. Initial expert reports were due on April 16, 2019, rebuttal expert reports are due on May 15, 2019, fact and expert discovery closes on May 31, 2019 (which includes any hearings on discovery motions), and motions must be filed by June 14, 2019. *Id.* In addition, the Court has indicated that "THERE SHALL BE NO FURTHER REQUESTS FOR EXTENSION OF TIME." *Id.*

### D.    The Court Orders Defendants' Production and Defendants Fail to Comply.

As a result of Defendants' repeated failures to comply with their discovery obligations and the upcoming deadlines, on February 26, 2019, Plaintiffs filed their Motion to Compel Production of Documents in Response to Plaintiffs'-Relators' First and Second Set of Requests for Production. Dkt. 140-7. The Court thereafter held telephonic hearings with the parties on March 1, 2019, March 7, 2019, and March 15, 2019. Dkt. 142, 143, 144. Before, between, and after the hearings, Plaintiffs continued to press Defendants to produce the documents at issue.

Defendants made limited productions during this time which failed to comply with the parties' protocols with respect to production.  Dkt. 146, 146-2.  On March 15, 2019, the Court ordered the parties to file supplemental briefing regarding the dispute, and to appear for a hearing on March 27, 2019.  Dkt. 144.  On March 22, 2019, Plaintiffs filed their supplemental brief in support of their Motion to Compel. Dkt. 146, 146-1, 146-2, 146-3.

The Court heard argument on March 27, 2019.  The minutes of the hearing note that "after extensive discussions with the lawyers and a hearing today, the Plaintiffs' motion to compel production of materials is GRANTED."  Dkt. 147. The Court subsequently entered its order compelling Defendants to produce all documents responsive to RFP Set Nos. 1 and 2 on or before midnight on April 1, 2019.  Dkt. 150.  On April 22, 2019, the Court granted Plaintiffs' request for attorneys' fees and costs in connection with their Motion to Compel.  Dkt. 153.

On March 27, 2019, Defendants made a production of certain missing spreadsheets of collection/payment data for 2012-2014.[2]  Rubinow Decl. ¶ 26.  On March 29, 2019, Defendants made another production of missing documents that contained three spreadsheets of collections/payment data for 2017 and 2018. Defendants incorrectly and falsely have asserted that the data in these collections/payment spreadsheets, as well as those previously produced, provide information about the amount of the co-payments or deductibles waived, these spreadsheets contain only a general category for "adjustments" that does not equate or bear any relationship to the amount of the co-payment or deductible waived.  *Id.*

---

[2] Several of these documents, however, were produced in unreadable format, and a corrected production had to be made after Plaintiffs alerted Defendants to the same.  In addition, more disturbingly, while the date stamp marking on most of the spreadsheets in this production indicated that that they were actually created during the first week of January, Defendants withheld them from Plaintiffs as part of a clear effort to prejudice Plaintiffs for a period of almost 10 weeks.  Rubinow Decl. ¶ 26.

¶ 27.  Moreover, while Defendants agreed on December 10, 2018 to respond by January 11, 2019 to Plaintiffs' prior specific requests for information regarding Defendants' practice of waiving patient co-payments and deductibles, the documents that Defendants produced in January 2019 consisted of two incomplete documents and one blank template, which also provided no meaningful information.  *Id.* ¶ 28.

Since Plaintiffs assert that Defendants routinely and unlawfully waived co-payments and deductibles that they were supposed to collect from patients covered by the Medicare program and/or commercial insurance (and did not collect required documentation to support any allegedly legitimate waivers of such co-payments/deductibles), the provision of such information obviously is critical in connection with Plaintiffs establishing liability as to these claims and to precisely calculate damages.  In light of Defendants' discovery misconduct, in connection with their expert reports, Plaintiffs were required to assume liability with respect to these claims and estimate the waivers of co-payment based upon their own employment experiences.  Rubinow Decl. ¶ 29.  To avoid Defendants from being rewarded for their knowing and willful discovery abuses, it is necessary for Plaintiffs to obtain the sanctions sought below with respect to co-payments for Medicare and commercial insurance patients.

On March 29, 2019, Defendants produced an excel spreadsheet with expense entries for Defendant Brett Braun for 2012-2014, as well as five random expense reimbursement requests for Mr. Braun for four months in 2013 (February, March, April and June) and one month in 2014 (April); these documents reflect that approximately $120,000 was spent on meals and entertainment for referring physicians from 2012 and 2013.  These documents also establish that Mr. Braun was providing referring physicians with expensive meals and tickets to sporting events in apparent violation of the Anti-Kickback Statute ("AKS").  However, since Defendants have failed to produce complete expense records despite their

1   repeated commitments and obligations to do so, Plaintiffs were only able to

2   calculate limited damages with respect to these claims.  As a result, to avoid

3   Defendants being rewarded for their discovery misconduct, Plaintiffs require the

4   relief requested below.  Rubinow Decl. ¶ 30.

5          On March 30, 2019, Defendants made a "Patient Record Production" of

6   "Data from NextGen system – 2006-2016" of approximately 600,000 documents,

7   while indicating that they could not locate an additional 100,000 documents.  On

8   April 1, 2019, Defendants then provided a link to 836,566 additional patient

9   records from the Nextgen system for the period 2006-2016, which they indicated

10  their IT team had just located the day before, but the 100,000 documents

11  apparently remain lost, missing or destroyed.  In essence, Defendants production of

12  this patient files constituted a massive document dump, which occurred two weeks

13  before Plaintiffs' expert reports were due.  Rubinow Decl. ¶ 31.

14         Plaintiffs immediately assembled a team to carefully review the documents

15  produced and, based on Plaintiffs' review of these documents and Defendants'

16  prior production of a sample of patient files to the Government in 2014, the patient

17  records produced on March 30, 2019 and April 1, 2019 are plainly incomplete.

18  Rubinow Decl. ¶ 32.  The production is missing, at a minimum, the following key

19  patient records: Fluorescein Angiography imaging, Indocyanine Green

20  Angiography imaging, Optical Coherence Tomography imaging, the patient file

21  doctors' notes that provide the evaluation of the patient's condition, reports of the

22  patient's testing results, explanation of the treatment options, documentation

23  regarding the patient's co-pay and deductible waivers and the patient's financial

24  hardship, disclosures signed by the patients acknowledging receipt of notice that

25  the treating physician has a financial interest in the surgical center where the

26  service was provided, and signed operative reports by the treating physician.  *Id.*

27         Notably, the types of records missing from this production were *included* in

28  the production the Defendants made to the government in 2014, which was

reproduced to Plaintiffs in November 2018.  Rubinow Decl.  ¶ 32.  The complete production of patient medical and billing records obviously is critical to Plaintiffs' ability to determine whether Defendants had any basis to waive any co-payments or deductibles, whether Dr. Bhatti's services at a different clinic were being double-billed to Medicare and Medi-Cal, whether Dr. Lilly Lee (Chang's spouse) was even present in the operating room when her services as an assistant were billed for or if her presence was fabricated in billing records, whether Defendants engaged in upcoding in its billings to Medicare and Medi-Cal with respect to certain procedures, whether Defendants' use of ICG tests was medically unnecessary, whether Defendants' referrals to San Gabriel Ambulatory Surgical Center ("SG-ASC") failed to disclose their ownership interest in this business entity as required by applicable law and whether Defendants' manipulated their reporting of pricing to Medi-Cal to fraudulently increase their reimbursement from Medi-Cal, all as alleged in Plaintiffs' operative Third Amended Complaint ("TAC").

Between March 11, 2019 and March 30, 2019, Defendants made a production of emails for the certain agreed upon custodians.  ESI, however, has not been produced for the following 17 custodians:  Rizwan Bhatti, Brett Braun, Tony Carmona, Camille Harrison, Jennifer Cruz, Anthony Culotta, Dorcas Fikejs, Julian Gonzalez, Lou Greenblatt, Vincent Hau, Polyanna Lee, Laz Peterson, Lilit Saakian, Mitchell Stein, Sharon Theodore, Peter Winn and Annie Zhou.  Thus, as Plaintiffs depose the critical witnesses in this case to meet the discovery deadline, they have been deprived of access to critical documents that would assist them in building their liability case.  Rubinow Decl. ¶ 33.

Defendants' production also is devoid of any completed CMS Form 1500s (the completion of which is required in connection with claims submitted to Medicare and Medi-Cal) or other reimbursement claim forms and full and complete Medicare and Medi-Cal enrollment agreements, which agreements and

forms contain certifications of compliance with applicable laws and the false completion of which establish the submission of false claims in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*  Rubinow Decl. ¶ 36.[3]

On April 1, 2019, the Court-ordered deadline for all documents responsive to RFPs Set No. 1 and Set No. 2 to be produced, Defendants made a production of four documents that contained two transmittal emails from April and August 2017 from Mr. Daniel Bienenfeld of VisionCare to Defendant Brett Braun and two invoices from 2013 that were sent to certain optometrists for a mobile diagnostic unit that cost $400.00.  This woefully incomplete production does not even contain documents regarding RIC's co-marketing or referral arrangements with RICX, despite Defendants' commitments and obligations to produce such documents. This incomplete production did permit Plaintiffs to complete full damages calculations with respect to the alleged kickbacks paid to RICX for the referral of business, as alleged in the TAC.  Rubinow Decl. ¶¶ 34-35.

On April 8, 2019, *after* the Court's deadline to produce documents responsive to RFP Set No. 1 and 2, Defendants produced responses to RFP Set No. 2 that contained objections, including privilege objections.  Rubinow Decl. ¶ 38. Defendants also produced a privilege log indicating they are withholding documents on the basis of attorney-client privilege.  *Id.*, Exh. B.  Defendants, however, previously acknowledged that they had waived all objections to RFP Set No. 2 by failing to respond timely.  *Id.* ¶¶ 12, 38.

On April 8, 2019, Defendants then made a production of various financial data spreadsheets for the Defendants' business operations, ICG dye purchasing

---

[3] Defendants have also never produced documents regarding the Physician Quality Reporting System ("PQRS"), which would permit Plaintiffs to prove their claim that Defendants knowingly submitted incomplete data in connection with the reimbursement that they received from the Center for Medicare and Medicaid Services ("CMS"), which payment was predicated on the submission of complete data.  Rubinow Decl. ¶ 37.

records for 2012-2019, an RIC Transaction report for 2006-2019, an August 2012 announcement of RIC Diagnostics Launch, and a May 2013 announcement that RIC Diagnostics was closing its business due to healthcare insurance and reimbursement reductions.  The documents appear to respond in large part to Plaintiffs RFP Set No. 3 which was due on April 8, 2019, though there was, as has been usual, no cover letter explaining the production.  Instead, the transmittal email that contained a link to the document production simply stated "Here is a copy of the download link for RIC PRODSET012The link is good for 30 days.  Let me know if you have any problems opening it."  In any event, the documents are incomplete and fail to cure Defendants' substantial discovery deficiencies. Rubinow Decl. ¶ 39.

Defendants' productions have also been extremely problematic because they appear to be deliberately inaccessible.  For example, they are produced with no cover letters and sometimes with no Bates-stamps, with no identification of what requests to which they are responsive, and with no system of organization.  Many of the productions have not been accessible or readable, requiring us to go back to Defendants' counsel because we are missing load files or access keys, or we have other problems accessing the documents. In addition, Plaintiffs' counsel have spent hundreds of hours reviewing millions of pages of documents over the last several weeks in order to confirm that the required information has not been produced. Rubinow Decl. ¶ 40.

On April 25, 2019, the parties met and conferred and Plaintiffs' counsel outlined the relief to be sought in this Motion.  Defendants' counsel offered no explanation for all of the missing documents and made no suggestion of appropriate relief short of that which is sought herein.  Rubinow Decl. ¶ 42.

### E.      Plaintiffs Serve Expert Reports Based Upon Available Data.

On April 16, 2019, Plaintiffs produced the expert reports of Dr. Joel Hay, Dr. Paul Tornambe, Dr. John Thompson and Mr. Ron Rosenberg.  Although

Plaintiffs were able to timely produce their expert reports by the April 16, 2019 deadline, they were required to use certain evidence as representative because complete data sets had not been completed, to use estimates in the absence of evidence that should have been produced by Defendants (and which they committed to produce), and to calculate limited damages in certain instances in the face of plainly incomplete data and evidence.  Rubinow Decl. ¶ 41.

## III.   ARGUMENT

### A.   The Court Is Authorized to Impose a Wide Range of Sanctions.

This Court is empowered by the federal rules and by its inherent authority to issue sanctions against a party and a party's counsel.  Federal Rules of Civil Procedure, Rule 37, authorizes a district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.  *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Pursuant to Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery,  fails to serve answers to interrogatories or document requests, or fails to admit matters the requesting party proves admitted, a court may issue further and just orders, including to:

1. Direct as established matters embraced in the order or other designated facts;
2. Prohibit the disobedient party to support or oppose designated claims or defenses;
3. Prohibit the disobedient party from introducing designated matters in evidence;
4. Strike pleadings in whole or part;
5. Stay further proceedings until an order is obeyed;

6. Dismiss an action or proceeding in whole or part;

7. Render a default judgment against the disobedient party; or

8. Treat as contempt of court the failure to obey an order (except an order to submit to a mental or physical examination).

Fed. R. Civ. P. 37(b)(2)(A); *see id*. 37(c), 37(d).  The central consideration for sanctions under Rule 37(b)(2) is "justice."  *Valley Eng'rs Inc. v. Electric Eng'g Co*., 158 F.3d 1051, 1056-57 (9th Cir. 1998).  The Ninth Circuit has explained the need for Rule 37(b)(2) sanctions:

Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

*G-K Props v. Redev. Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978).  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012), quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976).  Courts have "great latitude" in imposing sanctions under Rule 37.  *Lew v. Kona Hosp*., 754 F.2d 1420, 1425 (9th Cir. 1985).

Pursuant to Federal Rule of Civil Procedure 37(c)(1), " [if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This sanction is a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material...."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001); *see Bernstein*

*v. Virgin Am., Inc.,* No. 15-CV-02277-JST, 2018 WL 6199679, at *2 (N.D. Cal. Nov. 28, 2018) (Rule 37(c)(1) "gives teeth" to Rule 26's disclosure requirements).

Rule 26(g) requires parties or their counsel to certify that discovery disclosures and responses are complete and correct, reasonable, consistent with the federal rules and law, and not made for any improper purpose such as delay or increasing litigation costs. That same rule authorizes sanctions for any improper certification. Fed. R. Civ. P. 26(g)(3). Similarly, 28 U.S.C. § 1927 authorizes sanctions, including costs and attorneys' fees, against a party's counsel who has "multiplied the proceedings … unreasonably and vexatiously."

The Court also has inherent authority to issue sanctions. *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732-33 (9th Cir. 1995). Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). This Circuit has recognized as part of a district court's inherent powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power . . . to exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980).

### B.   Issue and Evidentiary Sanctions Are Necessary to Cure Defendants' Failure to Comply with the Court's Order.

Because Defendants have failed to comply with the Court's order compelling production of responsive documents, and because those documents are imperative to proving Plaintiffs' claims, specific issue and evidentiary sanctions – authorized by Rule 37, Rule 26 and this Court's inherent authority -- are necessary.

Rule 37(b)(2) authorizes the Court to "direct as established matters embraced in the order or other designated facts," and "prohibit the disobedient

1  party to support or oppose designated claims or defenses." Fed. R. Civ. P. 37(b)(2).

2  Rule 37(c)(1) prevents the use of information that was required to be disclosed

3  under Rule 26(a) or (e).  In addition, courts have inherent authority to award

4  sanctions and to manage cases to achieve their orderly and just disposition.  *See*

5  *Mark Indus.*, 50 F.3d at 732-33; *Chambers*, 501 U.S. at 43.  That authority includes

6  the broad discretion to make discovery and evidentiary rulings.  *Campbell Indus.*,

7  619 F.2d at 27.

8       As the Ninth Circuit has explained, where a party fails to comply with

9  discovery, there is a presumption that "the party resisting discovery is doing so

10  because the information sought is unfavorable to its interest. In such a case, the

11  sanction merely serves as a mechanism for establishing facts that are being

12  improperly hidden by the party resisting discovery."  *Gibson v. Chrysler Corp.*,

13  261 F.3d 927, 948 (9th Cir. 2001); *see Wanderer v. Johnston*, 910 F.2d 652, 657

14  (9th Cir.1990) (explaining that sanctions are appropriate where a party or someone

15  under the party's control is guilty of failing to produce documents or things as

16  ordered by the court). "There are two limitations to the application of a Rule

17  37(b)(2) sanction. First, "any sanction must be 'just'; second, the sanction must be

18  specifically related to the particular 'claim' which was at issue in the order to

19  provide discovery."  *Li*, 281 F.R.D. at 393, quoting *Ins. Corp. of Ireland, Ltd. v.*

20  *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

21       Courts have found specific curative sanctions appropriate where Defendants

22  fail to comply with court orders or with their own obligations under Rule 26.  *See,*

23  *e.g., Yeti,* 259 F.3d at 1106 (excluding expert testimony of damages where expert

24  report was delayed two and a half years and only produced one month before a trial

25  in a complex case); *Li*, 281 F.R.D. at 393 (entering an order deeming facts

26  admitted, precluding defenses and authorizing an adverse inference that documents

27  not produced were unfavorable to defendants); *Bernstein*, 2018 WL 6199679, at *5

28  (entering an order precluding use of belatedly produced documents and striking

affirmative defense)*; Lanier v. San Joaquin Valley Officials Ass'n*, No. 1:14-CV-01938-EPG, 2016 WL 7178706, at *2 (E.D. Cal. Dec. 9, 2016) ("The Court finds it appropriate, based on these failures, to preclude Plaintiff from introducing further facts or evidence in response to these issues."); *see also Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004) (affirming district court's discovery sanction order which determined that defendant corporation's principal officer was its alter ego); *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647-49 (Fed. Cir. 1994) (same).

### 1. Sanctions Related to Defendants' Failure to Produce Billing and Medical Records.

Most of Plaintiffs' claims relate to Defendants' medical procedures and billing practices. As a result, the production of complete patient medical records and billing records is critical to proving Plaintiffs' claims. Despite discovery requests, an extensive meet and confer record, and this Court's order, however, Defendants have largely refused to produce this responsive, relevant information. Defendants' flagrant violation of the Court's order requires curative measures.

First, Plaintiffs allege that Defendants have systemically engaged in medically unnecessary procedures (ICG testing) and in upcoding, resulting in false billing to Medicare and Medi-Cal in violation of the FCA and California FCA. Dkt. 98 at ¶¶ 110-147; Dkt. 111, p.4, 9-10. Second, Plaintiffs allege Defendants have violated the FCA by inappropriately waiving co-payments to induce repeat patient business in violation of the Anti-Kickback Statute ("AKS"). Dkt. 98 at ¶¶ 55-74. Third, Defendants engaged in the same co-payment waiver scheme with respect to commercial insurance in violation of the CA-IFPA. Dkt. 98 at ¶¶ 176-181; Dkt. 111 at pp. 12-13. Fourth, Plaintiffs allege that Defendants have engaged in double billing with respect to Dr. Bhatti's services. Dkt. 98 at ¶¶ 148-152. Plaintiffs understand that any time that Dr. Bhatti performed services at a clinic operated by a third party physician, Dr. Kislinger, Defendants double-billed for his

services.  Declaration of Bobbette Smith ("Smith Decl.") ¶ 11; Declaration of
Susan C. Rogers Smith ("Rogers Decl.") ¶ 15.  Fifth, Plaintiffs allege that
Defendants have engaged in false billing with respect to Dr. Lily Lee's services
(the spouse of Chang).  Defendants repeatedly identified Dr. Lee as assisting in
surgeries, and sought Medicare and Medi-Cal reimbursement for her services, but
she was not present in the operating room when surgeries were taking place.
Rogers Decl. ¶ 16; Smith Decl. ¶ 12.  Sixth, Plaintiffs allege that Defendants
submitted false reporting to Medi-Cal regarding their charges for certain CPT
codes and that these charges were inflated.  Dkt. 98 at ¶¶ 110-147.

   To prove these claims, Plaintiffs requested billing records, medical records
and other information that would demonstrate that such violations of the law were
occurring.  In particular, the Court ordered that Defendants produce:

1. Complete patient medical records documenting the number, frequency and
   necessity of ICG tests ordered by RIC physicians;

2. Complete patient medical records documenting the number, frequency and
   correct use of different E/M codes for office visits documented by RIC
   physicians;

3. Complete patient medical records and billing records identifying claims for
   beneficiary services submitted to the Medicare and Medi-Cal programs;

4. Complete billing records including Defendants' billing and reimbursement
   of CPT codes 99211-99215, 99204 and 99240, 99244 to Medicare, Medi-Cal
   and private insurance companies, including HMOs, and invoices sent to
   cash-paying patients for those came CPT codes;

5. Documents that enumerate the amount and frequency of co-payment waivers
   for Medicare and Medi-Cal patients by claim;

6. Documents that enumerated the amount and frequency of co-payment
   waivers for commercial insurance patients by claim;

7. Financial hardship forms and other documentation to support the waiver of

1   any Medicare, Medi-Cal and commercial insurance co-payments, as required
2   by applicable law;

3   8.  Medical billing records related to Dr. Bhatti's procedures;

4   9.  Medical billing records and signed operative reports related to Dr. Lily Lee's
5   procedures;

6   10. Form 1500s that Defendants submitted to Medicare and Medi-Cal for
7   reimbursement (and which contain Defendants' certifications of compliance
8   with applicable law).

9   Rubinow Decl.; Dkt. 150.

10  Defendants did not produce these documents.  As a result, Plaintiffs are
11  substantially prejudiced in prosecuting their claims.  Defendants have offered
12  shifting and contradictory excuses for their lack of compliance and production.
13  Rubinow Decl. ¶ 40.[4]

14  As a result of Defendants' failures, Plaintiffs were required to use the limited
15  data and information available to them in order to prepare and serve their expert
16  reports on the April 16, 2019 deadline.  For the patient medical records, Plaintiffs
17  used the patient records Defendants provided to the United States as the basis for
18  their expert reports and treated them as representative in the absence of any other
19  complete patient records.  In addition, where possible, Plaintiffs used reasonable
20  estimates as a proxy for the complete billing records that were not produced.

21  Under the circumstances and in light of Defendants' clear violations of the
22  Court's Order, Plaintiffs therefore ask the Court:

23  1.  To deem established that the patient medical records Defendants produced in
24  response to the subpoena from the United States are representative of all

25

26  [4] In addition, Defendants have belatedly made several productions that have no
27  system or organization, are not identified as being responsive to any particular
    portion of Plaintiffs' discovery requests or of the Court's order, lack Bates-stamps,
28  are incomplete, are not searchable, and some of which are not even readable.  *Id.*

17

Defendants' patient records for purposes of Plaintiffs' experts extrapolating the number of medically unnecessary ICG tests, upcoding of certain medical procedures and the resulting damages claimed;

2.  To deem established that Defendants waived the co-payments of patients for at least 30-35% of the claims submitted to Medicare and commercial insurance;

3.  To deem established that Defendants failed to collect any documentation to justify the waiver of co-payments for claims submitted to Medicare and commercial insurance;

4.  To deem established Defendants failed to collect any documentation to justify the waiver of these co-payments;

5.  To deem established that each Medicare and Medi-Cal claim reflected in Defendants' billing and collections spreadsheets was accompanied by an executed CMS Form 1500 and accompanying certification that Defendants had complied with all applicable laws, including the FCA and AKS;

6.  To deem established that at any time Dr. Bhatti was listed as performing surgery in Defendants' records, this resulted in double billing to Medicare and Medi-Cal;

7.  To deem established that at any time Dr. Lee is listed as assisting in surgery for Defendants, she was not present for such surgeries and this resulted in false billing to Medicare and Medi-Cal;

8.  To preclude the use by Defendants of any documents produced after April 1, 2019;

9.  To deem established that Defendants submitted false reporting to Medi-Cal regarding their charges for CPT Codes 67105 and 67028 and that the charges reported to Medi-Cal were inflated;

10. To preclude any argument from Defendants that the data and information upon which Plaintiffs' experts, Dr. Joel Hay, Dr. Paul Tornambe, Dr. John

Thompson and Mr. Ron Rosenberg, relied is not accurate or representative. These specific sanctions are required to address Defendants' blatant violations of its discovery obligations and this Court's order, and to permit Plaintiffs to prosecute their case without obstruction.

### 2. Sanctions Related to Defendants' Failure to Produce Expense Documentation.

Plaintiffs allege that Defendants violated the FCA and AKS by providing inducements in the form of expensive meals and entertainment to referring practitioners to refer patients to Defendants. *See* Dkt. 98 ¶¶ 75-81; Dkt 111, pp.3, 7, 9.  Plaintiffs thus requested, and the Court ordered, that Defendants produce documentation regarding their purchases of meals and entertainment to induce physicians to refer them patients.  Rubinow Decl.; Dkt. 150, p.9.

Although Defendants produced limited business documentation reflecting that approximately $120,000 was spent on meals and entertainment for referring physicians in 2012 and 2013, Defendants failed to produce any documentation for 2008-2012 and 2015.  Rubinow Decl. ¶ 30.  In addition, Defendants only produced six expense reports from 2012 and 2013 accounting for a mere $11,190.80 in spending during 2012 and 2013, despite Defendants' obligation to produce all expense reports from 2008-2015.  Based upon the six expense reports, Plaintiffs' expert, Dr. Joel Hay of the University of Southern California, was able to calculate damages of $130,201.65 as a result of these inducements.  Rubinow Decl. ¶ 30.

Under the circumstances and in light of Defendants' clear violation of the Court's Order, Plaintiffs ask the Court:

1. To deem established that Defendants spent at least $57,000 per year on meals and entertainment for referring physicians from 2008-2015;

2. To deem established that each dollar spent for such meals and entertainment was illegitimate and paid for the purpose of inducing referrals from referring physicians;

---

19

3. To deem established that each dollar spent had the effect of inducing referrals in violation of the AKS in the same proportion as the effect calculated by Dr. Hay with respect the inappropriate spending identified in Dr. Hay's expert report.

These specific sanctions are required to address Defendants' violations.

### 3. Sanctions Related to Defendants' Failure to Produce SG-ASC and RICX Records.

Defendants have failed to produce any documents regarding their referrals to San Gabriel Ambulatory Surgical Center ("SG-ASC") reflecting any disclosure of their financial interest in that enterprise and they have not produced complete records regarding referrals to them by RIC Diagnostics ("RICX"). Rubinow Decl. ¶ 37. Under the circumstances and in light of Defendants' clear violation of the Court's Order, Relators ask the Court:

1. To deem established that any referrals by Defendants to SG-ASC was not accompanied by any disclosure of Defendants' ownership interest in SG-ASC;

2. To deem established that any referrals from RICX to Defendants were the product of a monetary inducement that was provided with the purpose of accomplishing that referral and permitting Plaintiffs' expert, Dr. Hay, to extrapolate damages based upon the methodology he employed using the limited referral records available to Plaintiffs.

### 4. Sanctions Related to Defendants' Failure to Produce Records Regarding PQRS.

As detailed in the Rubinow Decl., Defendants have failed to produce any documents regarding the recent of their payment for participating in the Physician Quality Reporting System ("PQRS") and whether they reported sufficient data to justify their receipt of payment for such reporting from the Center for Medicare and Medicaid Services ("CMS"). Under the circumstances and in light of

Defendants' clear violation of the Court's Order, Relators ask the Court:

1. To deem established that Defendants did not submit appropriate or required data to justify the payment that they received from CMS for participating in the PQRS.

### 5. Defendants Failed to Produce Required Emails and Other ESI for Critical Custodians.

As detailed in the Rubinow Decl., Defendants failed to produce emails and other ESI for the following custodians: Rizwan Bhatti, Defendant Brett Braun, Tony Carmona, Camille Harrison, Jennifer Cruz, Anthony Culotta, Dorcas Fikejs, Julian Gonzalez, Lou Greenblatt, Vincent Hau, Polyanna Lee, Laz Peterson, Lilit Saakian, Mitchell Stein, Sharon Theodore, Peter Winn and Annie Zhou. Under the circumstances and in light of Defendants' clear violation of the Court's Order, Plaintiffs ask the Court to draw an adverse inference that the ESI and emails for these custodians would establish liability with respect to Plaintiffs' claims and instruct the jury that it should draw the same adverse inference.

### C. Additional Remedies Are Necessary and Warranted.

#### 1. The Court Should Strike Defendants' Objections to RFP No. 2 and Order the Production of Documents Withheld as Privileged.

Defendants failed to respond to Relators' RFP Set No. 2, and subsequently confirmed that they had waived all of their objections due to that failure. Nevertheless, on April 8, 2019, Defendants served responses to Relators' RFP Set No. 2 that contained objections. Rubinow Decl. ¶ 38. Defendants also included a privilege log and appear to have withheld documents on the basis of privilege. *Id.,* Exh. B. The Court should, therefore, strike Defendants' objections to RFP Set No. 2 are stricken and that any privileged asserted has been waived as to any documents sought by RFP Set No. 2, and order Defendants to immediately produce the withheld documents. *See Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

### 2. This Court Should Strike Certain of Defendants' Affirmative Defenses.

Defendants assert certain affirmative defenses that should be stricken in light of their discovery misconduct.  Specifically, Plaintiffs seek to strike the Second Affirmative Defense (asserting that Plaintiffs' claims are ambiguous), Fifth Affirmative Defense (invoking the doctrine of estoppel), Sixth Affirmative Defense (asserting that the alleged damages and wrongdoing detailed in the TAC was the result of acts or conduct of third parties), Seventh Affirmative Defense (asserting that Defendants acted in conformity with law), Eighth Affirmative Defenses (asserting that Plaintiffs' damages are speculative), Ninth Affirmative Defense (asserting that Defendants' acts and omissions were not the proximate cause of the alleged wrongdoing at issue), Eleventh Affirmative Defense (asserting that Plaintiffs' claims are vague and uncertain), Twelfth Affirmative Defense (asserting that Defendants' actions were. at all times, reasonable and taken in good faith within the exercise of their professional and business judgment), Sixteenth Affirmative Defense (asserting that no actual injury was suffered as a result of the claims asserted in the TAC), Seventeenth Affirmative Defense (asserting that the claims in the TAC are barred because Defendants acted in conformity with reasonable medical judgment and discretion), Eighteen Affirmative Defense (asserting that Defendants did not act with the requisite scienter), Nineteenth Affirmative Defense (asserting set-off based upon Defendants providing alleged medically necessary services), and Twenty-Second Affirmative Defense (asserting that Defendants' acts and omissions were not material to any payment decision by the federal or state government).

Defendants' discovery misconduct has impaired and interfered with Plaintiffs' ability and right to prove that these "defenses" are lacking in merit.

### 3. This Court Should Make a Finding of Civil Contempt.

Rule 37(b)(2) specifically authorizes the Court to issue a contempt order for a party's failure to comply with court orders. Civil contempt consists of "a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (internal quotations and citations omitted). The contempt need not be "willful." *Id*. A judgment of contempt may be entered upon finding that: (1) the party violated the order; (2) the violation did not constitute "substantial compliance" with the order; and (3) the violation was not based on a good faith and reasonable interpretation of the order. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *Haar v. City of Mt. View*, 2011 U.S. Dist. LEXIS 102790, at *3-4 (N.D. Cal. Sept. 12, 2011). Defendants have violated their discovery obligations and this Court's order. The violations were not based on any good faith or reasonable interpretation of those orders, and there was no substantial compliance. Indeed, Defendant Tom Chang instructed his former counsel to not respond to discovery responses. Rubinow Decl., Exh. A.

A civil contempt order should, therefore, be issued.

### D.   Monetary Sanctions Also Are Warranted for Defendants' Abuse of the Discovery Process.

Finally, Defendants should be ordered to pay monetary sanctions, including the fees and costs associated with bringing this motion and the hundreds of hours spent by Plaintiffs' counsel over the past several weeks reviewing the millions of pages of meaningless medical records and billing records that did not contain the promised and required information, for Defendants' failures to comply with the order of this Court. Rubinow Decl. ¶ 40. Rule 37(b) provides that "[i]nstead of or in addition to the orders [authorized by 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

1  substantially justified or other circumstances make an award of expenses unjust."

2  Fed.R.Civ.P. 37(b)(2)(C).  "Sanctions may be warranted under Federal Rule of

3  Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the

4  established issue bears a reasonable relationship to the subject of discovery that

5  was frustrated by sanctionable conduct."  *Navellier v. Sletten*, 262 F.3d 923, 947

6  (9th Cir.2001), *cert. denied sub nom., McLachlan v. Simon*, 536 U.S. 941, 122

7  S.Ct. 2623, 153 L.Ed.2d 806 (2002).  A court also may impose monetary sanctions

8  under its inherent powers. *Unigard Security Ins. Co. v. Lakewood Eng. Mfg. Corp.*,

9  982 F.2d 363, 368 (9th Cir.1992); *Li*, 281 F.R.D. 373, 396 (N.D. Cal. 2012);

10  *Brocade Commc'ns Sys.*, 2011 U.S. Dist. LEXIS 99932, at *15-16 (awarding

11  monetary sanctions against party for failing to comply with court's discovery

12  orders); *see also Chambers*, 501 U.S. at 56-57 (monetary sanction under court's

13  inherent authority is required to vindicate the affront to the court, to compensate

14  the innocent party, and to ensure that such abuses are not repeated).[5]

15         This monetary sanction is also appropriate and warranted under Rule 16(f),

16  Rule 26(g) and 28 U.S.C. § 1927. Sanctions are appropriate under Rule 16(f)

17  because Defendants failed to meet their obligations under the Court's order

18  compelling production.  Sanctions are appropriate under Rule 26(g) because

19  defense counsel improperly certified that Defendants' discovery responses were

20  complete, correct and reasonable. Fed. R. Civ. P. 26(g)(3).  Sanctions are also

21  authorized and appropriate under 28 U.S.C. § 1927 against defense counsel

22  _____

23  [5] As a result of Defendants' conduct, Plaintiffs were forced to spend substantial
   time and resources pursuing discovery, engaging in lengthy meet and confer
24  negotiations (that were ultimately fruitless), filing motions to compel, and
   ultimately filing this motion.  These efforts spanned several months and several
25  thousand dollars of hard costs.  The Court has already awarded Plaintiffs their fees
   and costs connected to their motion to compel.  The Court should issue a further
26  award of fees and costs related to bringing this motion.  Upon the granting of
   Plaintiffs' request, Plaintiffs will file a declaration regarding the total fees and
27  costs in connection with this motion.
28

because these sanctions represent the excess costs and fees against a party's counsel who has "multiplied the proceedings … unreasonably and vexatiously." Fed. R. Civ. P. 26(g)(3); *see Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995); *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1106 (9th Cir. 2002).

The purpose of Rule 37 is to "protect courts and opposing parties from delaying or harassing tactics during the discovery process." *Cunningham v. Hamilton County*, 527 U.S. 198, 208 (1999).  The intent of the drafters of Rule 37, as revised, was to "encourage the awarding of expenses and fees wherever applicable." *Id.*, internal quotation marks omitted; *see also LM Ins. Corp. v. ACEO, Inc.*, 276 F.R.D. 592, 593 (N.D. Ill. 2011) ("Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution ...").

As the history of this case confirms, Defendants can offer no substantial justification for their failure to comply with their basic discovery obligations. *See, e.g., Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981); *Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST, 2018 WL 6199679, at *3 (N.D. Cal. Nov. 28, 2018).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and issue the sanctions sought herein.

Dated: May 3, 2019                    Respectfully submitted,

/s/ Kolin C. Tang
Kolin C. Tang
Shepherd Finkelman Miller & Shah, LLP
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email:  ktang@sfmslaw.com
James E. Miller
Laurie Rubinow
Shepherd Finkelman Miller & Shah, LLP

65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email:  jmiller@sfmslaw.com
       lrubinow@sfmslaw.com

Monique Olivier
Olivier Schreiber & Chao, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone:  415.484.0980
Email: monique@osclegal.com

Chiharu G. Sekino
Jaclyn Reinhart
Shepherd, Finkelman, Miller & Shah, LLP
1230 Columbia Street, Suite 1140
San Diego, California 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: csekino@sfmslaw.com
      jreinhart@sfmslaw.com

*Attorneys for Plaintiffs-Relators*