Kolin C. Tang (SBN 279834)
Shepherd, Finkelman, Miller & Shah, LLP
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Phone: (323) 510-4060
Fax: (866) 300-7367
Email: ktang@sfmslaw.com

Attorneys for Plaintiffs-Relators

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORNIA, *ex rel* BOBBETTE A. SMITH and SUSAN C. ROGERS,<br><br>Plaintiffs,<br><br>v.<br><br>TOM S. CHANG, M.D., TOM S. CHANG, M.D., INC., MICHAEL A. SAMUEL, M.D., MICHAEL J. DAVIS, M.D., RETINA INSTITUTE OF CALIFORNIA MEDICAL GROUP, CALIFORNIA EYE AND EAR SPECIALISTS, BRETT BRAUN and SAN GABRIEL AMBULATORY SURGERY CENTER LP,<br><br>Defendants. | CASE NO.: 2:13-cv-3772-DMG (MRWx)<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS-RELATORS' MOTION FOR ISSUE, EVIDENTIARY AND MONETARY SANCTIONS**<br><br>Date: May 31, 2019<br>Time: 9:30 a.m.<br>Judge: Hon. Dolly M. Gee<br>Ctrm: 8C, 8th Floor<br><br>Discovery Cutoff: May 31, 2019<br>Pretrial Conference: September 3, 2019<br>Trial: October 1, 2019 |

Plaintiffs-Relators filed this motion for issue, evidentiary and monetary sanctions following Defendants' failure to comply with the Court's order requiring Defendants to produce all documents responsive to Plaintiffs-Relators' Requests for Production of Cocuments, Sets One and Two.  After consideration of the parties' motion, briefing, evidence and argument, the Court rules as follows.

**Background**

This False Claims Act action was originally filed under seal on May 28, 2013 [Dkt. 1] and Plaintiffs amended their Complaint under seal on September 30, 2013 [Dkt. 9].  After the Court unsealed this case on August 17, 2016 [Dkt. 44], and Plaintiffs served the Amended Complaint [Dkt. 66-75], Defendants filed a Motion to Dismiss the Amended Complaint on December 19, 2016 [Dkt. 81] and Plaintiffs filed their Second Amended Complaint on January 17, 2017 [Dkt. 89].  Defendants filed a Motion to Dismiss the Second Amended Complaint on February 14, 2017 [Dkt. 91], as well as Plaintiffs' Third Amended Complaint on September 5, 2017 [Dkt. 98-99].  Following the Court's decision on Defendants' Motion to Dismiss the Third Amended Complaint on June 1, 2018 [Dkt. 111], Defendants finally answered the operative complaint on June 22, 2018 [Dkt. 114].

Throughout the pendency of this action, Defendants have used four sets of counsel, including attorneys at Sheppard, Mullin, Richter & Hampton LLP, Nelson Hardiman, LLP, as well as their current counsel.  *See* Declaration of Laurie Rubinow at ¶ 14.  These changes have obviously resulted in significant delays in connection with the prosecution of this action.  *Id*.

Despite having years to comply with their obligations, Defendants have failed to produce documents that were identified in their own Initial Disclosures, as well as documents that are critical to the prosecution of this action, which were requested in Relators' First Set of Requests for Production ("RFP Set No. 1") and their Second Set of Request for Production of Documents ("RFP Set No. 2").

On May 10, 2017, Relators served RFP Set No. 1 on Defendants. On July 5, 2017, Defendants provided written objections and responses, and indicated that they would not produce documents until a Protective Order was in place. [Dkt. 140-2.] On February 15, 2018, the Court approved the parties' Stipulated Protective Order. Immediately thereafter, Relators' counsel emailed and attempted to reach Defendants' counsel by phone on February 20, 23, 27, and March 2, 2018, requesting that Defendants make a production in response to RFP Set No. 1 now that the Stipulated Protective Order had been approved by the Court. [*Id.*] Defendants finally responded and made their first production on March 16, 2018 of one PDF containing documents bates-labeled RETINA00001-RETINA011193. [*Id.*]

After reviewing the first production, Relators sent a letter to Defendants on July 20, 2018, identifying deficiencies in the production and requesting that Defendants supplement their response. [Dkt. 140-3.] On the same day, Relators also served RFP Set No. 2 on Defendants, the responses to which were due on August 20, 2018. [Dkt. 140-2.]

On August 23, 2018, Relators sent an email to Defendants requesting a meet and confer because Defendants had failed to: (1) respond to Relators' July 20, 2018 letter with respect to the deficiencies in their responses to RFP Set No. 1; and (2) respond to and produce any documents in response to RFP Set No. 2. *Id.*

On August 28, 2018, Defendants' counsel responded, informing Relators that they "no longer represent RIC and the other defendants as of July 16," even though counsel had jointly filed a Rule 26(f) Report on July 27, 2018, eleven days after July 16. *Id.*; [Dkt. 116.]

Subsequently, on September 24, 2018, the court approved the substitution of Terrence Jones as Defendants' counsel, who was later joined by Carla Ford as co-counsel for Defendants on September 28, 2018. [Dkt. 134.] Since that time, the parties have met and conferred on multiple occasions to resolve the outstanding

2

PROPOSED ORDER                                    CASE NO.: 2:13-cv-3772-DMG (MRWx)

1  discovery issues.

2      On November 30, 2018, Relators served Defendants with a pre-filing notice
3  pursuant to Local Rule 37-1. [Dkt. 140-6.] In that letter, Relators informed
4  Defendants that they waived their right to object to RFP, Set No. 2 due to their
5  failure to respond. [Id.] The parties met and conferred on December 7, 2018, [Dkt.
6  140-2] and, to memorialize Defendants' commitments to resolve the discovery
7  issues, on December 10, 2018, Defendants' counsel provided Relators with a
8  detailed outline of the production of documents they would make and the dates by
9  which they expected/anticipated doing so. *Id.* One week later, Defendants missed
10 the first date by which they had agreed to make that production. *Id.* The parties
11 met and conferred again on December 21, 2018, and Defendants made a limited
12 production that day and on December 28, 2018, which productions Defendants
13 then had to reproduce on December 31, 2018 to comply with the parties' ESI
14 protocols. [Dkt. 140-2.] However, these productions were also deficient. *Id.*

15     On January 9, 2019 and January 15, 2019, Relators again served Defendants
16 with a pre-filing notice pursuant to Local Rule 37-1. [*Id.*] In response to these
17 notices, the parties met and conferred again on January 17, 2019, but were unable
18 to resolve the discovery issues. [*Id.*] While Defendants repeatedly promised
19 Relators that they would produce all responsive documents to RFP, Set 1 and 2
20 within a certain timeframe, they failed to do so.

21     On February 5, 2019, the Court granted the parties' request to continue
22 certain deadlines in the case. [Dkt. 139.] Initial expert reports were due on April
23 16, 2019, rebuttal expert reports are due on May 15, 2019, fact and expert
24 discovery closes on May 31, 2019 (which includes any hearings on discovery
25 motions), and motions must be filed by June 14, 2019. [Id.] In addition, the Court
26 has indicated that "THERE SHALL BE NO FURTHER REQUESTS FOR
27 EXTENSION OF TIME." [Id.]

28     On February 26, 2019, Relators filed their Motion to Compel Production of

1  Documents in Response to Plaintiffs'-Relators' First and Second Set of Requests
2  for Production.  [Dkt. 140-7.]  The Court thereafter held telephonic hearings with
3  the parties on March 1, 2019, March 7, 2019, and March 15, 2019.  [Dkt. 142, 143,
4  144.]  Before, between, and after the hearings, Relators continued to press
5  Defendants to produce the documents at issue.  Defendants made limited
6  productions during this time which failed to comply with the parties' protocols
7  with respect to production.  [Dkt. 146, 146-2.]  On March 15, 2019, the Court
8  ordered the parties to file supplemental briefing regarding the dispute, and to
9  appear for a hearing on March 27, 2019.  [Dkt. 144.]  On March 20, 2019, Relators
10 filed their supplemental brief in support of their Motion to Compel.  [Dkt. 146,
11 146-1, 146-2, 146-3.]  The Court heard argument on March 27, 2019.  The minutes
12 of the hearing note that "[a]fter extensive discussions with the lawyers and a
13 hearing today, the Relators' motion to compel production of materials is
14 GRANTED."  [Dkt. 147.]  The Court subsequently entered its order compelling
15 Defendants to produce all documents responsive to RFP Set Nos. 1 and 2 on or
16 before midnight on April 1, 2019.  [Dkt. 150.]  On April 22, 2019, the Court
17 granted Relators' request for attorneys' fees and costs in connection with their
18 Motion to Compel.  [Dkt. 153.]
19      On March 27, 2019, Defendants made a production of certain missing
20 spreadsheets of collection/payment data for 2012-2014.  On March 29, 2019,
21 Defendants made another production of missing documents that contained three
22 spreadsheets of collections/payment data for 2017 and 2018.  Defendants
23 incorrectly and falsely have asserted that the data in these collections/payment
24 spreadsheets, as well as those previously produced, provide information about the
25 amount of the co-payments or deductibles waived, these spreadsheets contain only
26 a general category for "adjustments" that does not equate or bear any relationship
27 to the amount of the co-payment or deductible waived.  Moreover, while
28 Defendants agreed on December 10, 2018 to respond by January 11, 2019 to

Plaintiffs' prior specific requests for information regarding Defendants' practice of waiving patient co-payments and deductibles, the documents that Defendants produced in January 2019 consisted of two incomplete documents and one blank template, which also provided no meaningful information.

As Defendants know and Plaintiffs have repeatedly explained, since Plaintiffs assert that Defendants routinely and unlawfully waived co-payments and deductibles that they were supposed to collect from patients covered by the Medicare program and/or commercial insurance (and did not collect required documentation to support any allegedly legitimate waivers of such co-payments/deductibles), the provision of such information obviously is critical in connection with Plaintiffs establishing liability as to these claims and to precisely calculate damages. In light of Defendants' discovery misconduct, in connection with their expert reports, Plaintiffs were required to assume liability with respect to these claims and estimate the waivers of co-payment based upon their own employment experiences. To avoid Defendants from being rewarded for their knowing and willful discovery abuses, it is necessary for Plaintiffs to obtain the sanctions sought below with respect to co-payments for Medicare and commercial insurance patients.

On March 29, 2019, Defendants produced an excel spreadsheet with expense entries for Defendant Brett Braun for 2012-2014, as well as five random expense reimbursement requests for Mr. Braun for four months in 2013 (February, March, April and June) and one month in 2014 (April); these documents reflect that approximately $120,000 was spent on meals and entertainment for referring physicians from 2012 and 2013. These documents also establish that Mr. Braun was providing referring physicians with expensive meals and tickets to sporting events in apparent violation of the Anti-Kickback Statute ("AKS"). However, since Defendants have failed to produce complete expense records despite their repeated commitments and obligations to do so, Plaintiffs were only able to

calculate limited damages with respect to their claims arising from alleged violations of the AKS.

On March 30, 2019, Defendants made a "Patient Record Production" of "Data from NextGen system – 2006-2016" of approximately 600,000 documents, and while they indicated that they were attempting to locate the 100,000 documents remaining on the system, on April 1, 2019, Defendants then provided a link to 836,566 additional patient records from the Nextgen system for the period 2006-2016 which they indicated their IT team had just located the day before. In essence, Defendants production of this patient files constituted a massive document dump, which occurred two weeks before Plaintiffs' expert reports were due.

Plaintiffs immediately assembled a team to carefully review these documents and, based on Plaintiffs' review of these documents and Defendants' prior production of a sample of patient files to the Government in 2014, the patient records produced on March 30, 2019 and April 1, 2019 are plainly incomplete and are missing, at a minimum, the following key patient records: Fluorescein Angiography imaging, Indocyanine Green Angiography imaging, Optical Coherence Tomography imaging, the patient file doctors' notes that provide the evaluation of the patient's condition, reports of the patient's testing results, explanation of the treatment options, documentation regarding the patient's co-pay and deductible waivers and the patient's financial hardship, disclosures signed by the patients acknowledging receipt of notice that the treating physician has a financial interest in the surgical center where the service was provided, and signed operative reports by the treating physician.

Notably, the types of records missing from this production were *included* in the production the Defendants made to the government in 2014, which was reproduced to Plaintiffs in November 2018. The complete production of patient medical and billing records obviously is critical to Plaintiffs' ability to determine whether Defendants had any basis to waive any co-payments or deductibles,

whether Dr. Bhatti's services at a different clinic were being double-billed to Medicare and Medi-Cal, whether Dr. Lilly Lee (Chang's spouse) was even present in the operating room when her services as an assistant were billed for or if her presence was fabricated in billing records, whether Defendants engaged in upcoding in its billings to Medicare and Medi-Cal with respect to certain procedures, whether Defendants' use of ICG tests was medically unnecessary, whether Defendants' referrals to San Gabriel Ambulatory Surgical Center ("SG-ASC") failed to disclose their ownership interest in this business entity as required by applicable law and whether Defendants' manipulated their reporting of pricing to Medi-Cal to fraudulently increase their reimbursement from Medi-Cal, all as alleged in Plaintiffs' operative Third Amended Complaint ("TAC").

Between March 11, 2019 and March 30, 2019, Defendants made a production of emails for the following custodians: Talin Balin, Annie Bell, Jessica Boeckmann, Ivan Castillo, Tom Chang, Michael Davis, Jennifer Garcia, Alan Guagliardo, Joshua Hedaya, Lily Lee, Kristy Lin, Pia Rios, Marjorie Rivera, Christina Robles, Laura Rod, Marie Sakounphong, Michael Samuel, Doug Small, Kevin Suk, TomVon-Sydow, Albert Villatoro.  ESI has not been produced for the following 17 custodians:  Rizwan Bhatti, Brett Braun, Tony Carmona, Camille Harrison, Jennifer Cruz, Anothony Culotta, Dorcas Fikejs, Julian Gonzalez, Lou Greenblatt, Vincent Hau, Polyanna Lee, Laz Peterson, Lilit Saakian, Mitchell Stein, Sharon Theodore, Peter Winn and Annie Zhou.  Thus, as Plaintiffs depose the critical witnesses in this case to meet the discovery deadline, they have been deprived of access to critical documents that would assist them in building their liability case.  Indeed, the emails produced to date provide strong evidence that Defendants have engaged in a pervasive, fraudulent scheme throughout the pertinent period and literally have flaunted the law in a cavalier manner that is simply stunning.

Defendants' production also is devoid of any completed CMS Form 1500s

7

PROPOSED ORDER                                                         CASE NO.:  2:13-cv-3772-DMG (MRWx)

(the completion of which is required in connection with claims submitted to Medicare and Medi-Cal) or other reimbursement claim forms and full and complete Medicare and Medi-Cal enrollment agreements, which agreements and forms contain certifications of compliance with applicable laws and the false completion of which establish the submission of false claims in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.

Defendants have also never produced documents regarding the Physician Quality Reporting System ("PQRS"), which would permit Plaintiffs to prove their claim that Defendants knowingly submitted incomplete data in connection with the reimbursement that they received from the Center for Medicare and Medicaid Services ("CMS"), which payment was predicated on the submission of complete data.

On April 1, 2019, the Court-ordered deadline for all documents responsive to RFPs Set No. 1 and Set No. 2 to be produced, Defendants made another limited, incomplete production.

On April 8, 2019, after the Court's deadline to produce documents responsive to RFP Set No. 1 and 2, Defendants produced responses to RFP Set No. 2 that contained objections, including privilege objections. Defendants also produced a privilege log indicating they are withholding documents on the basis of attorney-client privilege. Defendants, however, previously acknowledged that they had waived all objections to RFP Set No. 2 by failing to respond timely.

On April 8, 2019, Defendants made another limited production that appeared to be a partial response to Plaintiffs RFP Set No. 3 which was due on April 8, 2019, though there was no cover letter explaining the production.

**Discussion**

This Court is empowered by the federal rules and by its inherent authority to issue sanctions against a party and a party's counsel. Federal Rules of Civil Procedure, Rule 37, authorizes a district court, in its discretion, to impose a wide

range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Pursuant to Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery, fails to serve answers to interrogatories or document requests, or fails to admit matters the requesting party proves admitted, a court may issue further and just orders, including to:

1. Direct as established matters embraced in the order or other designated facts;
2. Prohibit the disobedient party to support or oppose designated claims or defenses;
3. Prohibit the disobedient party from introducing designated matters in evidence;
4. Strike pleadings in whole or part;
5. Stay further proceedings until an order is obeyed;
6. Dismiss an action or proceeding in whole or part;
7. Render a default judgment against the disobedient party; or
8. Treat as contempt of court the failure to obey an order (except an order to submit to a mental or physical examination).

Fed. R. Civ. P. 37(b)(2)(A); *see id.* 37(c), 37(d). The central consideration for sanctions under Rule 37(b)(2) is "justice." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1056-57 (9th Cir. 1998). The Ninth Circuit has explained the need for Rule 37(b)(2) sanctions:

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a

serious dispute-settlement mechanism. *G-K Props v. Redev. Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012), quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). Courts have "great latitude" in imposing sanctions under Rule 37. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This sanction is a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material...." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see Bernstein v. Virgin Am., Inc.,* No. 15-CV-02277-JST, 2018 WL 6199679, at *2 (N.D. Cal. Nov. 28, 2018) (Rule 37(c)(1) "gives teeth" to Rule 26's disclosure requirements).

Rule 26(g) requires parties or their counsel to certify that discovery disclosures and responses are complete and correct, reasonable, consistent with the federal rules and law, and not made for any improper purpose such as delay or increasing litigation costs. That same rule authorizes sanctions for any improper certification. Fed. R. Civ. P. 26(g)(3). Similarly, 28 U.S.C. § 1927 authorizes sanctions, including costs and attorneys' fees, against a party's counsel who has "multiplied the proceedings … unreasonably and vexatiously."

The Court also has inherent authority to issue sanctions. *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732-33 (9th Cir. 1995). Courts are invested with inherent powers that are "governed not by rule or statute but by the

control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). This Circuit has recognized as part of a district court's inherent powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power . . . to exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (citations omitted).

Because Defendants have failed to comply with the Court's order compelling production of responsive documents, and because those documents are imperative to proving Relators' claims, specific issue and evidentiary sanctions – authorized by Rule 37, Rule 26 and this Court's inherent authority -- are warranted.

Courts have found specific curative sanctions appropriate where Defendants fail to comply with court orders or with their own obligations under Rule 26. *See, e.g., Yeti,* 259 F.3d at 1106 (excluding expert testimony of damages where expert report was delayed two and a half years and only produced one month before a trial in a complex case); *Li*, 281 F.R.D. at 393 (entering an order deeming facts admitted, precluding defenses and authorizing an adverse inference that documents not produced were unfavorable to defendants); *Bernstein*, 2018 WL 6199679, at *5 (entering an order precluding use of belatedly produced documents and striking affirmative defense)*; Lanier v. San Joaquin Valley Officials Ass'n*, No. 1:14-CV-01938-EPG, 2016 WL 7178706, at *2 (E.D. Cal. Dec. 9, 2016) ("The Court finds it appropriate, based on these failures, to preclude Plaintiff from introducing further facts or evidence in response to these issues.").

Most of Relators' claims relate to Defendants' medical procedures and billing practices. As a result, the patient medical records and billing records are critical to proving Relators' claims. Despite discovery requests, extensive meet

and confer, and this Court's order, however, Defendants have largely refused to produce this responsive, relevant information.

First, Plaintiffs allege that Defendants have systemically engaged in medically unnecessary procedures (ICG testing) and in upcoding, resulting in false billing to Medicare and Medi-Cal in violation of the FCA and California FCA. Dkt. 98 at ¶¶ 110-147; Dkt. 111, p.4, 9-10.  Second, Plaintiffs allege Defendants have violated the FCA by inappropriately waiving co-payments to induce repeat patient business in violation of the Anti-Kickback Statute ("AKS").  Dkt. 98 at ¶¶ 55-74.  Third, Defendants engaged in the same co-payment waiver scheme with respect to commercial insurance in violation of the CA-IFPA.  Dkt. 98 at ¶¶ 176-181; Dkt. 111 at pp. 12-13.  Fourth, Plaintiffs allege that Defendants have engaged in double billing with respect to Dr. Bhatti's services.  Dkt. 98 at ¶¶ 148-152. Fifth, Plaintiffs allege that Defendants have engaged in false billing with respect to Dr. Lily Lee's services (the spouse of Chang).  Sixth, Plaintiffs allege that Defendants submitted false reporting to Medi-Cal regarding their charges for certain CPT codes and that the charges reported to Medi-Cal were inflated.  To prove these claims, Plaintiffs requested, and the Court ordered, billing records, medical records and other information that would demonstrate that such violations of the law were occurring.

Plaintiffs also allege that Defendants violated the FCA and AKS by providing inducements in the form of expensive meals and entertainment to referring practitioners to refer patients to Defendants.  *See* Dkt. 98 ¶¶ 75-81; Dkt 111, pp.3, 7, 9.  Plaintiffs thus requested, and the Court ordered, that Defendants produce documentation regarding their purchases of meals and entertainment to induce physicians to refer them patients.  Dkt. 150, p.9.

Defendants have also failed to produce any documents regarding their referrals to San Gabriel Ambulatory Surgical Center ("SG-ASC") reflecting any disclosure of their financial interest in that enterprise and they have not produced

complete records regarding referrals to them by RIC Diagnostics ("RICX").

Defendants have also failed to produce any documents regarding the recent of their payment for participating in the Physician Quality Reporting System ("PQRS") and whether they reported sufficient data to justify their receipt of payment for such reporting from the Center for Medicare and Medicaid Services ("CMS").

**Curative Measures Are Granted**

Defendants have not timely produced the vast majority of the documents the Court ordered them to produce. As a result, Plaintiffs are substantially impaired and prejudiced in prosecuting their claims. Under the circumstances and in light of Defendants' clear violations of the Court's Order, the Court hereby orders:

1. It is established that the patient medical records Defendants produced in response to the subpoena from the United States are representative of all Defendants' patient records for purposes of Plaintiffs' experts extrapolating the number of medically unnecessary ICG tests, upcoding of certain medical procedures and the resulting damages claimed;

2. It is established that Defendants waived the co-payments of patients for at least 30-35% of the claims submitted to Medicare and commercial insurance;

3. It is established that Defendants failed to collect any documentation to justify the waiver of co-payments for claims submitted to Medicare and commercial insurance;

4. It is established Defendants failed to collect any documentation to justify the waiver of these co-payments;

5. It is established that each Medicare and Medi-Cal claim reflected in Defendants' billing and collections spreadsheets was accompanied by an executed CMS Form 1500 and accompanying certification that Defendants had complied with all applicable laws, including the FCA and AKS;

6. It is established that at any time Dr. Bhatti was listed as performing surgery in Defendants' records, this resulted in double billing to Medicare and Medi-Cal;

7. It is established that at any time Dr. Lee is listed as assisting in surgery for Defendants, she was not present for such surgeries and this resulted in false billing to Medicare and Medi-Cal;

8. Defendants are precluded from using any documents produced after April 1, 2019;

9. It is established that Defendants submitted false reporting to Medi-Cal regarding their charges for CPT Codes 67105 and 67028 and that the charges reported to Medi-Cal were inflated;

10. Defendants are precluded from arguing that the data and information upon which Plaintiffs' experts, Dr. Joel Hay, Dr. Paul Tornambe, Dr. John Thompson and Mr. Ron Rosenberg, relied is not accurate or representative.

11. It is established that Defendants spent at least $57,000 per year on meals and entertainment for referring physicians from 2008-2015;

12. It is established that each dollar spent for such meals and entertainment was illegitimate and paid for the purpose of inducing referrals from referring physicians;

13. It is established that each dollar spent had the effect of inducing referrals in violation of the AKS in the same proportion as the effect calculated by Dr. Hay with respect the inappropriate spending identified in Dr. Hay's expert report.

14. It is established that any referrals by Defendants to SG-ASC was not accompanied by any disclosure of Defendants' ownership interest in SG-ASC;

15. It is established that any referrals from RICX to Defendants were the product of a monetary inducement that was provided with the purpose of

accomplishing that referral and permitting Plaintiffs' expert, Dr. Hay, to extrapolate damages based upon the methodology he employed using the limited referral records available to Plaintiffs.

16. It is established that Defendants did not submit appropriate or required data to justify the payment that they received from CMS for participating in the PQRS.

These specific sanctions are required to address Defendants' violations and give Plaintiffs the necessary means to prosecute the case in light of Defendants' obstruction.

Defendants failed to produce emails and other ESI for the following custodians: Rizwan Bhatti, Defendant Brett Braun, Tony Carmona, Camille Harrison, Jennifer Cruz, Anthony Culotta, Dorcas Fikejs, Julian Gonzalez, Lou Greenblatt, Vincent Hau, Polyanna Lee, Laz Peterson, Lilit Saakian, Mitchell Stein, Sharon Theodore, Peter Winn and Annie Zhou. The Court orders that an adverse inference be drawn that the ESI and emails for these custodians would establish liability with respect to Plaintiffs' claims and, the jury will be so instructed.

In light of Defendants' violations, the following affirmative defenses are also stricken: the Second Affirmative Defense (asserting that Plaintiffs' claims are ambiguous), Fifth Affirmative Defense (invoking the doctrine of estoppel), Sixth Affirmative Defense (asserting that the alleged damages and wrongdoing detailed in the TAC was the result of acts or conduct of third parties), Seventh Affirmative Defense (asserting that Defendants acted in conformity with law), Eighth Affirmative Defenses (asserting that Plaintiffs' damages are speculative), Ninth Affirmative Defense (asserting that Defendants' acts and omissions were not the proximate cause of the alleged wrongdoing at issue), Eleventh Affirmative Defense (asserting that Plaintiffs' claims are vague and uncertain), Twelfth Affirmative

1 Defense (asserting that Defendants' actions were. at all times, reasonable and taken
2 in good faith within the exercise of their professional and business judgment),
3 Sixteenth Affirmative Defense (asserting that no actual injury was suffered as a
4 result of the claims asserted in the TAC), Seventeenth Affirmative Defense
5 (asserting that the claims in the TAC are barred because Defendants acted in
6 conformity with reasonable medical judgment and discretion), Eighteen
7 Affirmative Defense (asserting that Defendants did not act with the requisite
8 scienter), Nineteenth Affirmative Defense (asserting set-off based upon Defendants
9 providing alleged medically necessary services), and Twenty-Second Affirmative
10 Defense (asserting that Defendants' acts and omissions were not material to any
11 payment decision by the federal or state government).
12    Defendants' discovery misconduct has impaired and interfered with
13 Plaintiffs' ability and right to prove that these "defenses" are lacking in merit.
14    In addition, the Court makes an order of civil contempt against Defendants.
15 They have exhibited a course of conduct of obstruction of justice. Rule 37(b)(2)
16 specifically authorizes the Court to issue a contempt order for a party's failure to
17 comply with court orders. Civil contempt consists of "a party's disobedience to a
18 specific and definite court order by failure to take all reasonable steps within the
19 party's power to comply." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126,
20 1130 (9th Cir. 2006) (internal quotations and citations omitted). The contempt need
21 not be "willful." *Id.* A judgment of contempt may be entered upon finding that:
22 (1) the party violated the order; (2) the violation did not constitute "substantial
23 compliance" with the order; and (3) the violation was not based on a good faith and
24 reasonable interpretation of the order. *In re Dual-Deck Video Cassette Recorder*
25 *Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *Haar v. City of Mt. View*, 2011
26 U.S. Dist. LEXIS 102790, at *3-4 (N.D. Cal. Sept. 12, 2011). Defendants have
27 violated their discovery obligations and this Court's order. The violations were not
28 based on any good faith or reasonable interpretation of those orders, and there was

1  no substantial compliance.
2     Finally, the Court orders monetary sanctions.  Rule 37(b) provides that
3  "[i]nstead of or in addition to the orders [authorized by 37(b)(2)(A)], the court
4  must order the disobedient party, the attorney advising that party, or both to pay
5  the reasonable expenses, including attorney's fees, caused by the failure, unless the
6  failure was substantially justified or other circumstances make an award of
7  expenses unjust." Fed.R.Civ.P. 37(b)(2)(C).  Plaintiffs shall file a declaration
8  detailing their reasonable costs and expenses by _____.

    IT IS SO ORDERED.

    Dated: _____                          _____
                                                      Dolly M. Gee
                                                      United States District Judge